Argued and submitted July 18, 2013, convictions on Counts 4, 8, and 10 reversed and remanded; otherwise affirmed May 20, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RAUL BAUTISTA, JR.,
aka Raul Martin Bautista-Gonzalez,
*Defendant-Appellant.*

Washington County Circuit Court
C101293CR; A149119

351 P3d 79

Brian P. Conry argued the cause and filed the briefs for appellant.

Susan G. Howe, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Nakamoto, Presiding Judge, and Haselton, Chief Judge, and Egan, Judge.*

HASELTON, C. J.

---

* Haselton, C. J., *vice* Armstrong, P. J.

**HASELTON, C. J.**

Defendant appeals, challenging his convictions for one count of first-degree sodomy, ORS 163.405, and two counts of first-degree sexual abuse, ORS 163.427, following a second jury trial. Most significantly—and dispositively—for our review, defendant contends in his first assignment of error that the trial court erred in admitting, as prior consistent testimony, OEC 801(4)(a)(B), evidence of the complainant's testimony before the grand jury, as well as excerpts of the complainant's testimony during the first trial (which ended in a mistrial). We conclude that the trial court so erred and that that error was not harmless. Accordingly, we reverse and remand.

The circumstances pertinent to our review are as follows. Defendant was indicted in 2010 for sexual offenses against the complainant, his stepdaughter, A. The alleged conduct occurred between 1996 and 1999, when A was between the ages of five and eight and was living with her mother, defendant, and A's four siblings. A first reported the alleged abuse in a conversation with her boyfriend in late 2008. Not long thereafter, she also told her mother about the alleged abuse. By the time of A's disclosures, defendant and A's mother were no longer married.

Defendant was initially indicted on two counts of first-degree rape, two counts of first-degree sodomy, two counts of first-degree unlawful sexual penetration, and four counts of first-degree sexual abuse. Immediately before the first trial, the state dismissed five of the charges, *viz.*, one count of first-degree rape, one count of first-degree sodomy, one count of first-degree unlawful sexual penetration, and two counts of first-degree sexual abuse (Counts 1, 3, 5, 7, and 9, respectively). After the state presented its case-in-chief, the trial court granted defendant's motion for judgment of acquittal (MJOA) on the remaining count of first-degree rape (Count 2). The jury was unable to reach a verdict on the remaining charges of sodomy, unlawful sexual penetration, and two counts of sexual abuse (Counts 4, 6, 8, and 10), and the trial court granted a mistrial.

The state proceeded to a second trial on the four remaining counts, and at that second trial, as at the first,

the state presented evidence that, at the time of the alleged abuse, A's mother worked weekday mornings and, for at least part of that time, defendant stayed at home caring for the children.[1] With two significant exceptions described below, A's testimony at the second trial was generally consistent with her testimony during the first trial. Specifically, A recalled that the family was living in a mobile home and that the abuse occurred "many times"; nevertheless, she could recall the specifics of, at most, four encounters.[2] She recalled that, in one instance, defendant took her to his and her mother's bedroom alone, undressed her, and forced her to lie on her stomach. He then lay on top of her. She testified that she felt pain in the area of her vagina and anus. She testified that, in another instance, defendant forced her to hold his penis and moved her hands up and down, and, in a separate instance, defendant forced her to lick his penis, telling her to "lick it like a lollipop."

Again, generally consistently with her testimony at the first trial, A further recalled that, during another instance of abuse when she was lying on her stomach and defendant was on top of her, her siblings knocked on the door to come in. A testified that, when her siblings could not open the door, she remembered seeing little fingers pushed under the door. This memory was corroborated at trial by the testimony of two of her siblings, who testified that they remembered defendant taking A into the bedroom alone, remembered trying to go into the bedroom themselves and finding the door locked, and remembered some of A's brothers sticking their fingers under the locked door. A's mother also testified that the doorknob to the bedroom had a locking mechanism.

As noted above, A's testimony during the second trial varied substantially from her testimony at the first trial in two respects: (1) Whereas, at the first trial, A testified that defendant had touched her vagina, at the second trial,

---

[1] There was conflicting evidence from the state and defendant as to how often defendant was home alone caring for the children. Defendant testified that he was rarely home, and that, when he was there, there were always other adult relatives in the home with him.

[2] A could not clearly recollect whether these acts occurred all at the same time or at different times.

she did not recall and recount that contact. (2) Similarly, at the first trial, A testified that she had felt defendant's penis "inside of" her, but, at the second trial, she could no longer remember that circumstance.

At the second trial, as at the first, defendant's predominant theory of defense was that A had a motive to lie about the alleged abuse.[3] The defense posited, and presented evidence of, two overarching motives. First, defendant contended that A was motivated by dysfunctional family dynamics—that A had first told her mother about the alleged abuse during an argument between the two of them in early 2009,[4] and that, as the consequences of that accusation snowballed, A became too deeply committed to recant. Second, defendant contended, A had fabricated, and persisted in, her accusations so as to obtain favorable immigration consequences. It was undisputed that A was born in Mexico and had moved to the United States when she was a baby, but had no legal documentation allowing her to stay in this country. Defendant also adduced evidence pertaining to A's putative eligibility for a "U visa" predicated on status as a victim of domestic or sexual abuse[5] and elicited an admission from A, on cross-examination, that she had first become aware of her potential eligibility within about a week of her initial report to her mother. Defendant contended that, from that point on, A had persisted in false accusations so as to be eligible for a U visa.

In the course of the second trial, to counter the defense attacks on A's credibility, the state moved for the

---

[3] Defendant buttressed that defense by presenting evidence contradicting some of the evidence that the state presented. This included testimony from other relatives who, as children, had lived with the family during some of the time in question, who testified that defendant's bedroom door had no locking mechanism and that they had never seen defendant take A alone into the bedroom. Defendant himself also testified that the family did not live in the mobile home during the time period that A testified that the charged abuse had occurred.

[4] A, who was still a minor in early 2009, had run away and was living with the family of her boyfriend. Her mother had called the police and asked that the police return A to her mother's home. Upon being returned to her mother, A told her mother that defendant had sexually abused her when she was younger.

[5] *See* 8 CFR § 214.14 (describing U visas); *see generally State v. Valle*, 255 Or App 805, 298 P3d 1237 (2013) (addressing admissibility for impeachment purposes of evidence that the complainant had applied for a U visa).

admission of certain evidence pursuant to OEC 801(4)(a)(B). That rule provides:

"A statement is not hearsay if:

"(a)   The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:

"* * * * *

"(B)   Consistent with the testimony of the witness and is offered to rebut an inconsistent statement or an express or implied charge against the witness of recent fabrication or improper influence or motive[.]"

Specifically, the state sought the admission, as "prior consistent statements," of substantial portions of A's testimony from the first trial, as well as the testimony from a grand juror, who could, with the aid of notes she had taken during the grand jury proceedings, recall A's testimony before the grand jury.

The proffered "prior consistent statements" from A's testimony before the grand jury included her testimony that she and her siblings were alone with defendant when her mother was at work; that defendant would take her alone to his bedroom and take her clothes off, put her in defendant and her mother's bed, and close the curtains; that she remembered pain between her legs; that defendant had her touch his penis; and that defendant told her "to pretend it was a lollipop and put it in her mouth." The proffered "prior consistent statements" also included A's testimony at the first trial that defendant held her down on the floor and she could feel him holding her down on her lower back; that her anus and vagina "hurt really badly" and that she had trouble going to the bathroom; that defendant told her to lick his penis "like a lollipop"; and that defendant made her move her hands "up and down on his penis."[6]

---

[6] The state also offered as prior *inconsistent* statements, OEC 801(4)(a)(A), other portions of A's testimony from the first trial—specifically, her testimony that defendant had touched her vagina with his hand and that she remembered defendant's penis "being inside of [her]." The state argued that, for purposes of OEC 801(4)(a)(A), those statements were "inconsistent" with A's testimony at the second trial in which all she could remember and recount was pain in the area of her vagina and her anus. Defendant objected solely on the basis that testimony

The state argued that that evidence was admissible under OEC 801(4)(a)(B) to rebut defendant's charge that A was lying in order, *inter alia*, to obtain a U visa. Specifically, the state argued:

"[T]he idea is this: Once [A] takes the stand at trial and she is—it is suggested to the jury that she has—has a motive to fabricate this, *then every time she's ever talked about it is a prior consistent statement.* To the uniformed officer, to the detective, at Grand Jury, * * * when we met with her and at her prior trial. Each of those * * * instances [is a] prior consistent statement."

(Emphasis added.) Thus, the state asserted that all of the prior consistent statements were admissible, regardless of when the original motive to fabricate occurred, because the motive was "ongoing."[7]

---

from a prior trial could not be used to *impeach* the state's witness. In response to that objection, the trial court observed that it understood that the evidence was being offered under OEC 801(4)(a)(A) as *substantive* evidence, and not as impeachment evidence, and that it appeared that the proffered testimony satisfied the requisites of OEC 801(4)(a)(A). When the court invited defense counsel to "tell me why * * * [the statements] shouldn't come in," counsel offered no further objection or explanation.

Defendant's second assignment of error challenges the admission of that evidence. However, on appeal, the dispute over the admissibility of the purported prior inconsistent statements has shifted, qualitatively, to whether those statements were properly admissible as substantive evidence under the reasoning of *State v. Staley,* 165 Or App 395, 400-07, 995 P2d 217 (2000)—a case that neither party ever cited before the trial court and whose application implicates a careful assessment of case-specific considerations. *Id.*

As we explain below, 271 Or App at 259-60, given our analysis and disposition of defendant's first assignment of error, we need not reach and resolve the admissibility of the prior inconsistent statements. Nor, given that the record—specifically, with respect to *Staley*'s application—may well develop differently in the event of a retrial, this is a matter on which it is advisable to give anticipatory direction on remand.

[7] The state further contended that the same testimony proffered under OEC 801(4)(a)(B) was also admissible under the so-called "rule of completeness," OEC 106, to put into context portions of A's prior testimony to which the defense referenced in challenging her credibility. However, the state's invocation of the "rule of completeness" was categorical, rather than particular—that is, the state essentially asserted that that rule authorized the admission of very substantial portions of A's testimony in the first trial rather than identifying particular aspects of that testimony required to put into fair context defense references to A's prior testimony.

As described below, in admitting the challenged evidence, the trial court relied *solely* on OEC 801(4)(a)(B), with particular reference to countering a claim of prior fabrication.

Defendant remonstrated that, for a prior consistent statement to be admissible to counter a charge of "recent fabrication or improper influence or motive," the statement must have been made before the alleged motive to fabricate arose. Specifically, defendant reasoned:

> "Just because someone tells a lie and it's ongoing doesn't mean that that continually shifts that moment that the law recognizes as when the motive to lie arose. And, otherwise, *** it would—*it pretty much guts the rule if someone told a lie once and just because they maintained their lie, you could use all their—their prior testimony under that exception* or under that—that part of the rule that allows for prior consistent statements that are made before the motive to lie arose."

(Emphasis added.) Defendant concluded that, because A had made each of the disputed statements *after* the purported motive to fabricate had arisen, none was admissible under OEC 801(4)(a)(B).[8]

The trial court agreed with the state that the challenged evidence was admissible under OEC 801(4)(a)(B). In admitting the evidence, the court reasoned:

> "[T]he fabrication has to occur between the first statement and the second statement, therefore making it a prior consistent statement. So there has to be this kind of intervening, if you will, motive to fabricate. ***
>
> "\* \* \* \* \*
>
> "*** [T]he issue has been raised *** in such a way that *** it's the motive for fabrication all throughout this whole trial. So I think the state's entitled to get into all her prior consistent statements.
>
> "\* \* \* \* \*
>
> "And I would find *** that those are prior consistent statements because the State—the defense has raised this issue, *this ongoing issue* of the *** the motive to fabricate and it's—it's my ruling that this motive to fabricate has

---

[8] That was true with respect to all of the motives to lie that defendant raised. The family dysfunction, including A's argument with her mother, and A's awareness of potential U visa eligibility antedated both her grand jury testimony and her testimony during the first trial.

been presented in such a way by the defense that it's—it's not a past motive to fabricate, *it's ongoing*."

(Emphases added.)

The jury ultimately convicted defendant of one count of first-degree sodomy (Count 4) and two counts of first-degree sexual abuse (Counts 8 and 10).[9]

On appeal, the parties substantially reprise their positions regarding the admissibility of the disputed evidence.[10] Defendant maintains that, to qualify for admission under OEC 801(4)(a)(B), as rebutting a charge of recent fabrication, the statement must have been made before the asserted motive to fabricate arose. The state responds by suggesting that the prior consistent statements did not come "*after* the purported motive to fabricate arose," because defendant presented the motive as "present and ongoing[.] * * * Consequently, A's motive to lie, at least for immigration purposes, had not yet terminated."[11] (Emphasis added.)

The state's response is puzzling—and, with respect, may be a *non sequitur.* Again, OEC 801(4)(a)(B) provides that a statement is not hearsay if:

"(a)  The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is:

---

[9] The trial court granted a motion for judgment of acquittal on the remaining count of first-degree unlawful sexual penetration (Count 6).

[10] In addition to challenging the admissibility of A's statements that were admitted as "prior consistent statements," which is the basis for his first assignment of error, defendant raises three other assignments of error. As noted, defendant's second assignment of error challenges the admission, as "prior inconsistent statements," of certain portions of A's testimony during the first trial. *See* 271 Or App at 252 n 6. The third assignment of error challenges the denial of a motion for judgment of acquittal with respect to one of the counts of first-degree sexual abuse. And the fourth assignment of error challenges the admission of a tax return as evidence of the location of the parties' residence as of the time of the alleged abuse. As explained below, our analysis and disposition of the first assignment of error obviates any consideration of the second and fourth assignments. Further, as we will also explain, defendant's third assignment of error is predicated on a procedurally false premise. *See* 271 Or App at 259-60.

[11] The state also contends that defendant failed to preserve his present challenge to the admission of evidence of A's testimony before the grand jury (as distinguished from her testimony at the first trial). We reject that assertion without further discussion.

"\* \* \* \* \*

"(B) Consistent with the testimony of the witness and is offered to rebut an inconsistent statement or an express or implied charge against the witness of recent fabrication or improper influence or motive[.]"

To be sure, a charge of fabrication presumes that, as of the time a witness gives the allegedly fabricated testimony at trial, the motive to fabricate "has not yet terminated." But that hardly means that the proponent of that testimony can "rebut" a charge of fabrication by way of prior testimony that was, itself, subject to the same, continuing alleged motive to fabricate. Rather, the rebutting prior testimony must have been given "before the alleged motive to fabricate arose." *Powers v. Officer Cheeley*, 307 Or 585, 591, 771 P2d 622 (1989).

In *Powers*, the Supreme Court explained, in some detail, the bases for that condition:

"'Recent fabrication' are words of art having a meaning and a context in which they were customarily employed in the law long before the Oregon Evidence Code was adopted. \* \* \*

"This court recognized the rule that generally prior consistent declarations of a witness are inadmissible in *Maeder Steel Products Co. v. Zanello*, 109 Or 562, 577, 220 P 155 (1924). The *Maeder* court noted an exception which allows admitting out-of-court declarations of a witness that are consistent with the witness's testimony at trial but only if qualified under the recent fabrication rule:

"'Where, however, a witness has been assailed on the ground that his story is a recent fabrication, or that he has some motive for testifying falsely, proof that he gave a similar account of the transaction when the motive did not exist, before the effect of such account could be foreseen, or when motives of interest would have induced a different statement, is admissible \* \* \*. 109 Or at 578.'

"*Maeder* implies what other cases expressly hold, that the word 'recent' means that the prior consistent statement which may be admitted is one made before the alleged motive to fabricate arose. As Professor McCormick explains, the class of statements [is] admissible 'to show

that a witness whose testimony has allegedly been influenced told the same story *before* the influence was brought to bear.' McCormick, Evidence 747, § 251(d)(1)(B) (3d ed 1984). That chronology of prior statement first, influence or motive second, distinguishes the admissible statement from one which may be fabrication of 'recent' origin. The absence of motive or influence to fabricate at the time the statement was made increases its trustworthiness. A statement made after the motive to fabricate arises is not as trustworthy and is excluded."

*Id.* at 591-92 (some internal citations and internal quotation marks omitted; emphasis in original).

Here, defendant asserts—and we do not understand the state to dispute—that A's purported motives to fabricate antedated both her testimony before the grand jury and her testimony at the first trial, and continued throughout. *Accord State v. Villanueva-Villanueva,* 262 Or App 530, 533-34, 325 P3d 783 (2014) (noting state's concession that, "given when the victim's alleged motive to fabricate arose, her statements were not admissible under OEC 801(4)(a)(B)"). Accordingly, evidence of A's testimony in those proceedings was not admissible to rebut a charge of recent fabrication under OEC 801(4)(a)(B).

The state contends, nevertheless, that the same evidence was properly admissible on either of two alternative grounds—one which the state referenced before the trial court, and the other which is being raised for the first time on appeal. *See generally Outdoor Media Dimensions Inc. v. State of Oregon,* 331 Or 634, 659-60, 20 P3d 180 (2001) (describing and prescribing conditions for review of proffered alternative bases for affirmance). First, the state contends that the challenged statements were admissible under the "rule of completeness," OEC 106.[12] Second, the state asserts that

---

[12] OEC 106 provides:

"When part of an act, declaration, conversation or writing is given in evidence by one party, the whole on the same subject, *where otherwise admissible,* may at that time be inquired into by the other; when a letter is read, the answer may at that time be given; and when a detached act, declaration, conversation or writing is given in evidence, any other act, declaration, conversation or writing which is necessary to make it understood may at that time also be given in evidence."

(Emphasis added.)

the same evidence was admissible under OEC 801(4)(a)(B) to "rebut an inconsistent statement." *See generally State v. Johnson*, 340 Or 319, 343, 131 P3d 173 (2006) (addressing admissibility under OEC 801(4)(a)(B) of prior consistent testimony "for the purpose of rehabilitating a witness whose truthfulness and accuracy of memory had been challenged in cross-examination").

The state's "rule of completeness"-predicated argument is unavailing. Even assuming, without deciding, that some portions of A's testimony might be "otherwise admissible" and provide pertinent context within the purview of OEC 106, the state has made no effort on appeal (as it did not before the trial court) to identify with particularity what those portions might be. *See* 271 Or App at 253 n 7. Here, as in myriad other contexts, it is not "our proper function to make or develop a party's argument when that party has not endeavored to do so itself." *Beall Transport Equipment Co. v. Southern Pacific*, 186 Or App 696, 700 n 2, 64 P3d 1193, *adh'd to on recons*, 187 Or App 472, 68 P3d 259 (2003). Accordingly, we decline to consider that inadequately developed contention. *See generally Biggerstaff v. Board of County Commissioners*, 240 Or App 46, 56, 245 P3d 688 (2010) ("[O]ur consideration of an alternative basis for affirmance is a matter of prudential discretion and not compulsion.").

The state's other proffered alternative basis for admissibility is similarly deficient. Again—and unsurprisingly given the state's failure to raise that ground before the trial court—there is no reasoned and particularized explication relating specific statements, which were erroneously admitted under the "rebutting a charge of recent fabrication" rationale, to the belatedly posited alternative ground. Moreover, if that effort had been made in the first instance, the record—not the least, pertaining to the trial court's putative exercise of OEC 403 discretion—might well have developed differently. Again, we decline to consider the merits of that alternative ground.

Our consideration of the first assignment of error thus reduces to whether the trial court's error in admitting the testimony at issue was harmless or requires reversal. An error is harmless only if there is "little likelihood that

the particular error affected the verdict[.]" *State v. Davis*, 336 Or 19, 32, 77 P3d 111 (2003). Based on our review of the record, we cannot say that that standard of harmlessness was satisfied here. As noted, A's purported lack of credibility was central to the defense; accordingly, the admission of evidence purporting to buttress A's credibility went "directly to the heart of defendant's factual theory of case." *Davis*, 336 Or at 34. Further, and in a closely related sense, we have observed:

> "In the absence of overwhelming evidence of guilt, we have held that where, as here, erroneously admitted hearsay evidence significantly reinforces the declarant's testimony at trial, the admission of those statements constitutes error requiring reversal of the defendant's conviction."

*State v. Wood*, 253 Or App 97, 101, 289 P3d 348 (2012); *see also Villanueva-Villanueva*, 262 Or App at 534-35 (error in admitting hearsay statements that the state offered to rehabilitate the complainant's testimony under OEC 801(4)(a)(B) was not harmless where "the state's case largely depended on the [complainant's] credibility"). We conclude that—regardless of the admissibility of the evidence that is the subject of defendant's second and fourth assignments of error, *see* 271 Or App at 252 n 6, 255 n 10—the error in admitting A's "prior consistent" statements was not harmless.

      Our conclusion in that regard obviates any need, as a dispositional matter, to address the merits of defendant's second and fourth assignments of error. Nor, contrary to defendant's ostensible premise, does the disposition of defendant's third assignment of error, challenging the denial of a motion for judgment of acquittal on one of the first-degree sexual abuse charges (Count 8), depend on the resolution of the second assignment of error.

      Defendant posits that, if the evidence that is the subject of the second assignment was erroneously admitted, there was no legally sufficient evidence to support his conviction on Count 8. That contention fundamentally misapprehends our standard of review with respect to the denial of motions for judgment of acquittal: A trial court's denial of a MJOA is reviewed in the light of all evidence admitted at trial, and not only the evidence properly admitted. *State*

*v. Rinkin,* 141 Or App 355, 359-60, 917 P2d 1035 (1996); *see also State v. Verdine,* 290 Or 553, 558, 624 P2d 580 (1981) ("[I]n testing the sufficiency of the evidence[,] we must consider the evidence erroneously admitted that should have been suppressed, as well as the other evidence."). With the inclusion of the "prior inconsistent statement" evidence that is the subject of the second assignment of error, the evidence on Count 8 was legally sufficient to support a conviction. Accordingly, as to that count, defendant is not entitled to an outright reversal but, instead—as with the other counts on which he was convicted—to a reversal and remand.

Convictions on Counts 4, 8, and 10 reversed and remanded; otherwise affirmed.