Argued and submitted May 26, 1999, affirmed September 27, 2000, petition for review denied January 30, 2001 (331 Or 584)

STATE OF OREGON,
*Respondent,*

*v.*

STEVEN HOWARD VORCE,
*Appellant.*

(941110; CA A96726)

11 P3d 674

Walter J. Ledesma, Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, Public Defender.

Kaye McDonald, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Brewer, Judge, and Warren, Senior Judge.

LANDAU, P. J.

**LANDAU, P. J.**

Defendant appeals a judgment of conviction on multiple counts of conspiracy and attempt to commit various offenses involving the sexual abuse of children. He advances a number of assignments of error, including that the trial court erred in permitting a state witness to offer testimony as to defendant's predisposition to commit the crimes. We affirm, writing only to address the contention that the trial court erred in allowing the testimony as to defendant's predisposition.

The relevant facts are undisputed. Defendant purchased a magazine, "Slightly Kinky," in which he saw an advertisement that stated: "Society does not understand my needs or those of my children. Looking for a man who does. Please be discreet." Unknown to defendant, the ad had been placed by Bruce Ackerman, a "consultant" who worked for the United States Postal Service. Defendant responded to the ad, and Ackerman wrote back, using the pseudonym "Nancy," claiming to be a divorced mother of three young children.

Over the next five months, defendant sent 13 letters to Nancy, several of which described his previous experiences and desires toward children and the sexual acts that he wished to perform with Nancy's three children. Eventually, Nancy arranged a meeting at a hotel for the express purpose of satisfying defendant's pedophilic fantasies. Defendant arrived at the meeting place and discussed in detail his sexual plans for the children with a female police officer who posed as Nancy. The officer told defendant that the children were in the next room. When defendant entered the room, the officer arrested him.

At trial, defendant raised an entrapment defense. The state questioned Ackerman about his correspondence with defendant. When asked why he phrased one of his letters in a particular way—specifically, why he referred to the children's "special education"—Ackerman responded that "[i]t's a term that can be interpreted several different ways by individuals based on their predisposition." Defendant objected that the state was attempting to introduce expert,

scientific testimony without laying a foundation and moved for a mistrial. The state argued that, because defendant had raised a defense of entrapment, Ackerman's testimony about defendant's possible predisposition was appropriate. The court sustained the objection but denied the mistrial motion. The court then instructed the jury to "disregard Mr. Ackerman's testimony to the effect that the ad was placed in the magazine in order to attract individuals who are predisposed to commit child abuse."

Following the curative instruction, the state again asked Ackerman why he phrased one of his letters to defendant in a particular way—this time, why he used the term "sweethearts" with reference to children—and Ackerman responded that the term is one "that can be used by people that have a sexual interest in minor children." Again defendant objected, but the trial court overruled the objection.

Still later, the state asked Ackerman why he had used another phrase in one of his letters, and Ackerman replied that he did so because defendant had used the phrase. According to Ackerman, he parroted back such phrasings "so that I'm not advancing someone's ideas, concepts, knowledge, so that I'm basically not forwarding things, I'm staying behind." Defendant renewed his objection, and again it was overruled.

On appeal, defendant contends that the trial court erred in allowing the state to admit Ackerman's testimony in each of the three foregoing instances because it violated a pretrial ruling that he was not to testify about defendant's predisposition to commit child sex crimes. Defendant, however, failed to identify any such pretrial ruling. Nor could we find any record of such a ruling. We reject the contention without further discussion.

■ Defendant also contends that the trial court erred in allowing Ackerman to testify as to defendant's predisposition to commit child sex crimes without having been qualified as an expert to offer such testimony. According to defendant, an individual's predisposition to commit a particular crime is a matter of scientific evidence, and the state had failed to establish that Ackerman possessed the qualifications to offer scientific evidence. The state argues that, whether or not

Ackerman should have been permitted to testify about defendant's predisposition to commit child sex crimes, the fact remains that the trial court plainly instructed the jury to ignore that testimony.

We agree with the state. To begin with, only the first two of the three supposedly objectionable portions of Ackerman's testimony mentioned anything about possible predisposition to commit child sex crimes. The third, concerning Ackerman's use of terms that defendant already had employed in his correspondence, did not include any mention of predisposition.

Moreover, the court instructed the jury to disregard Ackerman's testimony to the extent that he testified that he attempted to attract people predisposed to sexually abuse children. We assume that a jury has followed a court's curative instruction in the absence of a compelling argument to the contrary. *State v. Barone*, 329 Or 210, 242, 986 P2d 5 (1999), *cert den* 528 US 1086 (2000). Such arguments must be based on an "overwhelming probability" that the jury was incapable of following the court's instruction. *State v. Smith*, 310 Or 1, 26, 791 P2d 836 (1990). Defendant offers no such argument in this case.

In any event, in light of the other evidence of defendant's prior experience with and interest in having sex with children, it is highly unlikely that the testimony affected the verdict, and any error was therefore harmless.

Affirmed.