STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BRANDON WAYNE HENDERSON-LAIRD,
aka Brandon Wayne Hendersonlaird,
*Defendant-Appellant.*

Lane County Circuit Court
201301392, 201307356;
A155203 (Control), A155204

380 P3d 1066

Josephine H. Mooney, Judge.

Emily P. Seltzer, Deputy Public Defender, argued the cause for appellant. With her on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Andrew M. Lavin, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Hadlock, Chief Judge, and Egan, Judge.*

---

\* Hadlock, C. J., *vice* Nakamoto, J. pro tempore.

**EGAN, J.**

Defendant appeals a judgment of conviction in Case Number 201301392 for possession of methamphetamine, ORS 475.894, and theft in the first degree, ORS 164.055, and raises two assignments of error.[1] Because defendant's second assignment of error is not preserved, we reject it without further discussion and write only to address the first. In that assignment, defendant contends that the trial court erred in admitting hearsay statements that a confidential informant (CI) made to a detective. The state does not contest that the trial court erred in admitting the hearsay statements, but contends that "the hearsay did not prejudice defendant." We conclude that the CI's statements were inadmissible hearsay; thus, the trial court erred in admitting them. Additionally, we conclude that that error was harmless in relation to defendant's conviction for possession of methamphetamine but was not harmless in relation to his conviction for theft in the first degree. Accordingly, we reverse and remand defendant's conviction for theft in the first degree, remand the case for resentencing, and otherwise affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

Detective Espinoza was working with the CI. Espinoza witnessed the CI participate in a controlled drug buy with defendant's girlfriend outside of defendant's residence. Although defendant did not participate in the transaction, Espinoza saw defendant watch the deal from a distance. The CI also told Espinoza that defendant sold drugs from his residence, had possession of stolen firearms, and traded methamphetamine for firearms. Based on that information, Espinoza obtained a search warrant to search defendant and his residence. During the search of defendant's residence, detectives found methamphetamine, firearms, some of which were stolen, and a digital scale.

---

[1] Although defendant also appeals the judgment of conviction for first-degree failure to appear in Case Number 201307356, he does not raise any challenge to that conviction. Accordingly, we affirm the judgment in that case without further discussion.

As relevant on appeal, the state charged defendant by indictment with possession of methamphetamine constituting a commercial drug offense, ORS 475.894, ORS 457.900 (Count 2), and theft in the first degree, ORS 164.055 (Count 5). The state alleged in the indictment that Count 2 was a "commercial drug offense" because defendant was unlawfully in possession of a firearm or was in possession of a firearm for the purpose of using it in connection with a controlled substance offense; defendant was in possession of materials being used for the packaging of controlled substances; and he was in possession of stolen property. The state also alleged in Count 5 of the indictment that defendant "unlawfully and knowingly commit[ted] theft of a Browning 20 gauge shotgun"—theft by receiving.

Because our analysis depends on the details of testimony admitted at trial, we now outline that testimony in some detail.

A. *Detective Espinoza's Testimony*

At trial, Espinoza testified that, inside defendant's residence, detectives found methamphetamine, a digital scale, a gun holster, and several firearms. The firearms included a Browning 20-gauge shotgun found in defendant's bedroom stuffed between mattresses, a handgun found in a dresser in defendant's bedroom, a short-barreled shotgun found in a child's room, and a Benelli 12-gauge camouflage shotgun found in an unlocked safe in the living room. Espinoza testified that digital scales are connected to controlled substance offenses because individuals in the business of selling drugs use the scales to weigh the drugs before selling them. Espinoza also testified that firearms are often used for protection and traded for cash or drugs.

Espinoza testified that, after conducting the search, police located defendant and brought him to the police station. At the police station, Espinoza read defendant his *Miranda* rights and told defendant that they found "methamphetamine, [a] shotgun as well as a handgun, and [a] digital scale[]" in his bedroom, and "a sawed-off shotgun and another shotgun in the living room." Defendant told Espinoza that "the items in [defendant's] bedroom were his. However, the shotguns in the other parts of the residence

did not belong to him." Defendant also admitted that he used methamphetamine.

Espinoza testified that, before the search of defendant's residence, he had obtained information from other informants that defendant had firearms in his residence that were stolen, and the firearms located in defendant's residence matched the informants' description of the stolen firearms. The Browning shotgun found in defendant's bedroom matched the description of a shotgun that had been stolen in a burglary in Eugene, Oregon. Espinoza had contacted the victim of that burglary, who identified the Browning shotgun as his property. Espinoza also testified that he spoke with Powell, the brother of defendant's girlfriend, who had pleaded guilty to stealing the Browning shotgun.

On cross-examination, defendant questioned Espinoza about an affidavit that Espinoza wrote after the search of defendant's residence. Espinoza testified that "there's information that [defendant] was buying stolen guns and was selling methamphetamine for the stolen guns in the affidavit."

Defendant also asked Espinoza the following questions about the CI:

"[Defense Counsel]: And, in fact, that confidential informant was a heroin addict, correct?

"[Espinoza]: Correct.

"[Defense Counsel]: In your experience as a police officer, do you know heroin addicts to be deceptive individuals?

"[Espinoza]: Not necessarily. Not all the time."

On redirect, the state asked Espinoza a series of questions that defendant did not object to:

"[The State]: And can you tell me specifically what items the CI told you about that you were able to confirm in the home?

"[Espinoza]: First one of them was a black sawed-off shotgun, which we located. Second one was a [Benelli] camouflage shotgun that I was told was stolen. The third item was a holster that was underneath kind of a dinner table that was in the living room of the residence where

information was that [defendant] would keep a gun when transactions would be taking place.

"[The State]: So you found that holster, you found the sawed-off shotgun, and you found the Benelli shotgun?

"[Espinoza]: Correct.

"[The State]: And did they all—did that person also give you information on how the defendant got these firearms?

"[Espinoza]: Correct. Information was that those firearms were all traded for methamphetamine.

"[The State]: And didn't Mr. Powell tell you that he traded—what did Mr. Powell tell you about how—what happened with that shotgun he took in the burglary?

"[Espinoza]: Mr. Powell advised that he traded the shotgun to [defendant] for methamphetamine.

"[The State]: And—and what about—did the CI tell you how these firearms are placed in the house? Are they in plain view?

"[Espinoza]: No. He—the CI advised that the firearms are hidden around the house 'cause [defendant] was worried ***."

The state then asked Espinoza if the CI had provided any information about defendant and methamphetamine, and defendant objected:

"[The State]: Did the CI tell you anything about [defendant] and methamphetamine.

"[Defense Counsel]: Objection. It's beyond the scope. I even asked the Court to strike that.

"[The Court]: Overruled.

"[The State]: You can answer.

"[Espinoza]: Okay. She—the [CI] advised me that Mr.—

"[Defense Counsel]: Objection. It's hearsay.

"[The State]: Your Honor, the defense attorney opened the door by suggesting that the CI could not be trusted, and so I'm simply continuing with the inquiry about whether

or not they were able to corroborate anything the CI told them.

"[Defense Counsel]: Well I'd like to be heard outside the presence of the jury on that."

Outside the presence of the jury, defendant argued that his questions about the CI did not open the door to Espinoza's testimony about what the CI had told him about defendant's involvement with methamphetamine, and that the testimony was hearsay and would violate defendant's confrontation rights if admitted. In response, the state conceded that the testimony would ordinarily be inadmissible. However, the state argued that the trial court should allow the testimony because defendant "opened the door" by asking Espinoza about the CI's statements and reliability, and the statements about defendant and methamphetamine demonstrated that the CI's information was corroborated by the police.

The trial court overruled defendant's objection and allowed the state to ask Espinoza about what the CI had told him regarding defendant's involvement with methamphetamine. Espinoza responded:

"The CI advised me [that defendant] also sells methamphetamine from the residence and is present when [defendant's girlfriend] has sold heroin. The CI advised [that defendant was] in possession * * * of methamphetamine and stolen firearms, which the CI stated and heard [defendant] say[] he traded methamphetamine for the firearms.

"He's seen [defendant] in possession of a handgun, which [defendant] tapes underneath the living room table. Also a black sawed-off shotgun, [Benelli] camouflage shotgun. [Defendant] told [the CI] he had just purchased the firearms and believes the [Benelli] camouflage * * * shotgun is stolen.

"[The CI] advised [defendant] that * * * he had his firearms throughout the residence for safety in case somebody attempts to rob him."

B.  *Additional Testimony Regarding the Browning Shotgun*

At defendant's trial, Powell testified that he had pleaded guilty to committing a burglary in Eugene where he

stole a Browning shotgun. Although Powell admitted that he had stolen the Browning shotgun, he claimed that he did not know what had happened to the firearm after he had stolen it. However, Powell eventually acknowledged that, in pleading guilty, he had admitted that he had traded or sold the Browning shotgun after stealing it.

Detective Potter also testified for the state. Potter had interviewed Powell after the burglary in Eugene, where the Browning shotgun was stolen. During that interview, Powell had admitted that he had stolen the Browning shotgun. Potter also testified that Powell had two versions of what had happened to the Browning shotgun, but that "he ended up trading the shotgun to [defendant] in exchange for methamphetamine."

## C.  *Jury Instructions and Conviction*

Defendant requested a special jury instruction regarding the CI's statements. The trial court granted that request and instructed the jury, in relevant part, as follows:

"The statements attributed to the informant mentioned in the search warrant affidavit are not admissible to prove that the defendant delivered or possessed methamphetamine for incidents observed by the informant. You also may not use the statements to find that if the defendant delivered or possessed methamphetamine in the past that he, therefore, delivered or possessed methamphetamine in this case."

The jury convicted defendant of possession of methamphetamine constituting a commercial drug offense (Count 2) and theft in the first degree (Count 5).[2]

On appeal, defendant argues that Espinoza's testimony about the CI's statements constituted inadmissible hearsay, and that defendant did not "open the door" to admission of those hearsay statements. Defendant contends that the error in admitting the testimony was not harmless

---

[2] Before trial, the state dismissed the unlawful possession of a machine gun, short-barreled rifle, short-barreled shotgun or firearms silencer (Count 3) and theft in the first degree (Count 4). The jury acquitted defendant of unlawful delivery of methamphetamine (Count 1).

because it likely affected the jury's verdict on the charges of theft and possession of methamphetamine. The state does not contest that the trial court erred, but argues that the error was harmless because there is ample other evidence and the jury instruction cured the error.

## II. ANALYSIS

A. *Hearsay*

The admissibility of hearsay is a question of law that we review for legal error. *See State v. West*, 145 Or App 322, 325, 930 P2d 858 (1996), *rev den*, 326 Or 43 (1997). Hearsay is an out-of-court statement offered to prove the truth of the matter asserted, and is inadmissible unless an exception to the rule against hearsay applies. OEC 801(3); OEC 802.

On redirect, the state asked Espinoza what the CI had told him about defendant's involvement with methamphetamine and defendant objected to that testimony, arguing that it was hearsay. The state responded that defendant "opened the door by suggesting *** the CI could not be trusted," and the trial court overruled defendant's objection. Espinoza then testified about the out-of-court statements that the CI had made to him, and those statements were offered to prove the truth of defendant's involvement with methamphetamine. Thus, that testimony was hearsay.

Moreover, defendant did not "open the door" to admission of that hearsay. *See State v. Miranda*, 309 Or 121, 128, 786 P2d 155, *cert den*, 498 US 879, 111 S Ct 212 (1990) ("A defendant's own inquiry on direct examination into the contents of otherwise inadmissible statements opens the door to further inquiry on cross-examination relating to those same statements."). Although defendant elicited testimony about the CI's heroin use and reliability during cross-examination, that testimony did not create a misleading or unfair impression—Espinoza stated that the CI was a heroin addict, but testified that heroin addicts are not necessarily deceptive individuals. The hearsay evidence that was admitted on redirect did not negate that attack on the CI's reliability. *State v. Renly*, 111 Or App 453, 458, 827 P2d 1345 (1992) (concluding that there was no "open

door" to the admissibility of testimony because it "did not in any way tend to negate, explain or counterbalance any misleading or unfair impression that defendant's evidence could possibly have caused the jury"). *But cf. State v. Andonri*, 143 Or App 298, 306-07, 923 P2d 658, *rev den*, 324 Or 488 (1996) (concluding that "the evidence about the child's character for truthfulness directly counterbalances the misleading or unfair impression created for the jury by the admission of inadmissible evidence about defendant's character for truthfulness"). Thus, defendant did not open the door to admission of Espinoza's hearsay testimony.

Additionally, the state does not argue on appeal, and the trial court did not consider, any exception to the rule against hearsay that would have permitted admission of the CI's statements to Espinoza. Because we conclude that the admission of the CI's statements to Espinosa was inadmissible hearsay, and thus error, we must now determine whether that error was harmless.

## B. *Harmless Error Analysis*

"We will affirm a judgment of conviction notwithstanding the erroneous admission of evidence if there is little likelihood that the admission of the evidence affected the verdict." *State v. Sewell*, 222 Or App 423, 428, 193 P3d 1046 (2008), *adh'd to on recons*, 225 Or App 296, 201 P3d 918, *rev den*, 346 Or 258 (2009). When we evaluate that likelihood, we "consider[] the nature of the erroneously admitted evidence in the context of other evidence on the same issue." *Id.* at 429.

### 1. *Possession of methamphetamine*

To convict defendant of possession of methamphetamine constituting a commercial drug offense, as alleged in the indictment, the state was required to prove that defendant was unlawfully in possession of a firearm or was in possession of a firearm for the purpose of using it in connection with a controlled substance offense; that he was in possession of materials being used for the packaging of a controlled substance; and that he was in possession of stolen property. Defendant contends that the hearsay testimony from the CI caused the jury to conclude that defendant

used the digital scale found in his bedroom for packaging drugs. The state responds that other unchallenged testimony demonstrated that defendant used the digital scale for drug transactions and was nearly identical to the testimony to which defendant assigns error. We agree with the state.

The hearsay testimony relevant to defendant's possession of methamphetamine charge includes the following:

"[Detective Espinoza]: The CI advised me [defendant] also sells methamphetamine from the residence and is present when [defendant's girlfriend] has sold heroin. The CI advised [defendant] in possession *** of methamphetamine and stolen firearms, which the CI stated and heard [defendant] say[] he traded methamphetamine for the firearms.

"He's seen [defendant] in possession of a handgun, which [defendant] tapes underneath the living room table. Also a black sawed-off shotgun, [Benelli] camouflage shotgun. [Defendant] told the [CI] he had just purchased the firearms and believes the [Benelli] camouflage *** shotgun is stolen.

"[CI] advised [defendant that] *** he had his firearms throughout the residence for safety in case somebody attempts to rob him."

Here, the erroneously admitted hearsay testimony was cumulative of evidence to which defendant did not object. *See State v. McHenry*, 161 Or App 606, 613, 985 P2d 873 (1999), *rev den*, 329 Or 589 (2000) (any error in admitting testimony was harmless where defendant objected once, but not when similar testimony was later elicited from the same witness without objection).

The state presented other evidence, apart from the hearsay testimony, that defendant used the digital scale for packaging controlled substances. Espinoza testified that, when he interviewed defendant, defendant admitted that the digital scale and methamphetamine found in defendant's bedroom belonged to him. Espinoza testified that digital scales are connected to controlled substance offenses because individuals in the business of selling drugs use the scales to weigh the drugs before selling them.

The state also presented evidence that defendant was involved in drug transactions. Espinoza testified that he observed defendant watch his girlfriend during a controlled drug buy with the CI outside of defendant's residence, which is identical to part of the hearsay testimony. Espinoza also testified, without objection, that the CI told him that defendant kept a gun holster underneath a table in the living room for "transactions" the holster was found during the search. Espinoza testified that Powell told him that he had traded the Browning shotgun to defendant for methamphetamine.

The evidence, taken as whole, essentially demonstrated the same content as the CI's hearsay statement that defendant used the digital scale for packaging controlled substances. *See State v. Klein*, 243 Or App 1, 15, 258 P3d 528 (2011), *aff'd*, 352 Or 302, 283 P3d 350 (2012) (concluding that "the excluded evidence would have demonstrated exactly the same thing as the admitted evidence" and that the proffered evidence was not "different in nature" from the evidence admitted). Thus, the hearsay testimony was cumulative of the other evidence to which defendant did not object. Moreover, the trial court instructed the jury that

"[t]he statements attributed to the [CI] mentioned in the search warrant affidavit are not admissible to prove that defendant * * * possessed methamphetamine for incidents observed by the informant. You also may not use the statements to find that if the defendant * * * possessed methamphetamine in the past that he, therefore, * * * possessed methamphetamine in this case."

Therefore, the hearsay testimony was not prejudicial. *See State v. Vorce*, 170 Or App 61, 65, 11 P3d 674, *rev den*, 331 Or 584 (2000) ("We assume that a jury has followed a court's curative instruction in the absence of a compelling argument to the contrary.").

For those reasons, we conclude that there is little likelihood that the admission of the hearsay testimony affected defendant's conviction for possession of methamphetamine constituting a commercial drug offense.

## 2. *Theft in the first degree*

To convict defendant of theft in the first degree (Count 5), as stated in the indictment, the state was required to prove that defendant "unlawfully and *knowingly* commit[ted] theft of a Browning 20 gauge shotgun." (Emphasis added.) Defendant argues that "the hearsay testimony went specifically to defendant's knowledge that firearms in his possession were stolen, while the state's other evidence went * * * solely to defendant's involvement with stolen firearms generally."

The hearsay testimony that defendant argues was prejudicial included Espinoza's testimony that the "CI advised [that defendant was] in possession * * * of methamphetamine and stolen firearms, which the CI stated and heard [defendant] say he traded methamphetamine for the firearms." And the testimony that went specifically to defendant's state of mind with regard to the Benelli camouflage shotgun was Espinoza's testimony that "[defendant] told the [CI] he had just purchased the firearms and *believes* the [Benelli] camouflage * * * shotgun is stolen." (Emphasis added.)

The other evidence to which defendant did not object included Powell, the brother of defendant's girlfriend, admitting that he had pleaded guilty to selling the Browning shotgun after he stole it. Espinoza and Potter both testified that Powell had told them that he sold the Browning shotgun to defendant in exchange for methamphetamine. And, finally, Espinoza testified that the affidavit in support of the warrant to search defendant's residence included information that defendant "was buying stolen guns and was selling methamphetamine for the stolen guns."

Although a jury could infer from the other evidence that was admitted without objection that defendant knew the Browning shotgun was stolen, the hearsay testimony provided direct evidence of defendant's state of mind. The hearsay testimony demonstrates that defendant *knew* the Benelli camouflage shotgun in his possession was stolen. That testimony is specific to defendant's knowledge that the Benelli camouflage shotgun was stolen, and there is

no other direct evidence that defendant knew that one of the guns he possessed was stolen. Thus, the hearsay testimony is qualitatively different from the other evidence. *See State v. Richardson*, 253 Or App 75, 81, 288 P3d 995 (2012), *rev den*, 353 Or 714 (2013) (concluding that the erroneously admitted evidence—statements by the deceased victim that defendant and Penn had taken her home from her without her agreement—was not harmless because it was "qualitatively different from evidence that the victim was medicated, that Penn had lied about taking the victim's home, and that Penn had obtained the home by making a false promise"); *see also State v. Davis*, 336 Or 19, 34, 77 P3d 1111 (2003) (concluding that "[t]he statements that defendant proffered were qualitatively different than the evidence that the jury heard" because "[n]othing in the admitted evidence expressly indicated that the victim threatened to kill herself because of her relationship with defendant"). Therefore, we cannot say that there is little likelihood that the admission of the hearsay testimony affected the jury's verdict on the the first degree charge.

### III. CONCLUSION

In sum, the trial court erred in admitting the hearsay statements. That error was harmless with respect to defendant's conviction of possession of methamphetamine because the hearsay testimony was cumulative of the other evidence presented at trial. However, the improperly admitted hearsay testimony was qualitatively different from the other evidence presented at trial with respect to defendant's conviction of theft in the first degree, and thus was not harmless with respect to that conviction. Accordingly, we reverse and remand defendant's conviction for theft in the first degree and otherwise affirm.

In Case Number 201301392, conviction for theft in the first degree reversed and remanded; remanded for resentencing; otherwise affirmed. In Case Number 201307356, affirmed.