DeVORE, J.
*421 Defendant appeals a judgment of conviction for second-degree assault, ORS 163.175, and unlawful use of a weapon, ORS 166.220. She assigns error to the trial court's admission of evidence under OEC 401, 402, and 404(4), arguing that evidence of her acts one year after the charged offenses was irrelevant and inadmissible. Defendant contends that the error was not harmless because it undermined her credibility. The state responds that the evidence was relevant but, if not, that it had little likelihood of affecting the verdict. Assuming without concluding that the trial court erred, we determine that any error was harmless. Accordingly, we affirm.
Defendant was involved in an assault that occurred in April 2014. She had discovered that her boyfriend had an affair with the victim. After that discovery, defendant sent a series of text messages to the victim, expressing awareness of the relationship and making numerous violent threats, including to "smash [the victim's] fucking head in" and to kill the victim. The next day, defendant *583 appeared while the victim was retrieving an item from her vehicle in front of her grandmother's house. Before the victim could exit her car, defendant jumped on the victim and began beating her. Defendant hit the victim repeatedly with her fists. According to the victim and the grandmother, defendant also hit the victim with a liquor bottle she found in the backseat. After the attack, defendant left the scene, and the victim was taken to the hospital. Defendant texted the victim again to say, "Cheater chea[t]er pum[p]kin eater."
Approximately one month later, a police officer interviewed defendant as part of an investigation into the assault. During the recorded interview, defendant yelled at the officer. She acknowledged sending the text messages, but adamantly denied attacking the victim. Defendant blamed the injuries on the victim's boyfriend.
Defendant was charged with second-degree assault, ORS 163.175, and unlawful use of a weapon, ORS 166.220. In July 2015, more than a year after the assault, defendant and the victim both appeared at the Linn County Courthouse for a trial date, which was then rescheduled. According to the *422 victim, as she and her family prepared to leave the courthouse, defendant approached their vehicle, yelling profanities and gesturing with her middle finger.
In October 2015, the case was tried to a jury. The state called the victim as a witness, and she testified about threats leading up to the charged incident, the attack in which defendant assaulted her with a liquor bottle, and resulting injuries. The state called the victim's grandmother as a witness, who similarly described defendant beating the victim with the bottle, and described the resulting injuries. The state supplemented the testimony with photographs depicting defendant's threatening text messages, the victim's injuries (including swelling and dark bruising on her face, chest, arms, and legs), and the car in which the assault took place (including the liquor bottles therein). In addition, the jury watched the entire video recording of the police officer's interview with defendant.
During its case-in-chief, the state asked the victim about the July encounter with defendant outside the courthouse. Defendant objected on relevancy grounds. The trial court overruled the objection. The state asked:
"[PROSECUTOR]: What happened in July?
"[VICTIM]: Oh, we had court and showed up here and court went as usual. And after court was over with, my grandmother, my sister, and I, and [the victim advocate], we walked out to my truck to leave and got in the truck. And [defendant] had left the courthouse and went around the municipal building and came up behind me and started flipping me off and yelling at me.
"[PROSECUTOR]: What was she yelling at you, do you remember?
"[VICTIM]: Cuss words and-yeah, cuss words.
"[PROSECUTOR]: How did that make you feel?
"[VICTIM]: I was intimidated, I was scared. And my grandma was with me too, and she was scared. She just told me, "Drive, drive." And then we got around the corner and I pulled over to call [the victim advocate] to let her know what had happened. And she hadn't even made *423 it back into the courthouse. And they just told me to call down at the police station."[1]
The state's closing argument focused on a few key pieces of evidence: defendant's text messages and testimony; the victim's and grandmother's testimony regarding the assault and injuries; and circumstantial evidence of defendant using the liquor bottle, *584 including pictures and two liquor bottles collected as evidence from the victim's car. The state argued that defendant "lied from the beginning," citing, in particular, her interview with the police. The state did not mention the courthouse encounter.[2]
Defendant's strategy was to acknowledge that she had assaulted the victim but to cast doubt on her having wielded a liquor bottle. To that end, she attacked the credibility of the victim and the grandmother. Defendant emphasized the lack of DNA evidence on the liquor bottles, and she scrutinized the victim's injuries to question whether a liquor bottle was the cause. On the stand, defendant made several admissions-her "blind rage," her texts and death threats, and the assault itself. Defendant also admitted she lied to the police officer investigating the assault. She denied, however, that she used a liquor bottle as a weapon, and she claimed that she hit the victim with her fists alone. In closing arguments, defendant urged the jury to enter a guilty verdict for only the lesser-included offense of fourth-degree assault.
The jury unanimously convicted defendant of both second-degree assault and unlawful use of a weapon.
*424 On appeal, defendant assigns error to the trial court's decision to admit evidence of her hostile conduct more than a year after the charged incident. She contends that the evidence was inadmissible under OEC 401, 402, and 404(4) because it was not relevant to prove the sole issue disputed at trial-whether she used a liquor bottle to attack the victim. Defendant contends that the error was not harmless because it undermined her credibility, casting her as an "aggressive and out-of-control person." She argues the case turned on a "credibility contest" between herself, the victim, and the victim's grandmother, because the question of whether she struck the victim with a bottle was reduced to whose testimony the jury believed. Defendant concludes that the disputed evidence "invited the jury to find defendant guilty of using a dangerous weapon in assaulting [the victim] merely because she was hostile more than a year later." Defendant believes that the disputed evidence affected the verdicts because both counts required the jury to find she used a dangerous weapon.
The state counters that the error was harmless for two reasons. First, the jury already knew of defendant's aggressive nature through other evidence. Second, the record contained ample evidence showing that defendant hit the victim with a liquor bottle. The state concludes that there is little likelihood the jury relied on the challenged testimony to determine that defendant assaulted the victim with a liquor bottle.
If the trial court erroneously admitted testimony about the later encounter, we will nonetheless affirm the judgment if little likelihood exists that this error affected the verdict. State v. Davis , 336 Or. 19, 32, 77 P.3d 1111 (2003) (describing the standard, under Article VII (Amended), section 3, of the Oregon Constitution). This analysis involves considering the nature of the erroneously admitted testimony in the context of other evidence on the same issue and whether it would be duplicative, cumulative, or unhelpful to the jury. Id. at 33-34, 77 P.3d 1111. We also examine the importance of the evidence to either party's theory of the case, noting evidence relating to a central issue-as opposed to a tangential one-will likely have a greater effect on the verdict. State v. Basua , 280 Or. App. 339, 345, 380 P.3d 1196 (2016).
*425 Considering the tangential nature of the testimony and the other evidence pertaining to defendant's aggression and credibility, we conclude that the evidence had little likelihood of affecting the verdict. The testimony regarding defendant's courthouse conduct was not "qualitatively different than the evidence that the jury heard." Davis , 336 Or. at 34, 77 P.3d 1111. Defendant's anger and aggression towards the victim was well-established. Defendant herself openly admitted to attacking the victim in a "blind rage." Likewise, she admitted sending several text messages containing violent death threats. To the *585 extent the challenged testimony made defendant appear "aggressive and out-of-control," it would not have added anything to the jury's assessment of defendant given other evidence of her more obviously violent conduct, even without a bottle. Thus, its admission was unlikely to have had an effect. See State v. Henderson-Laird , 280 Or. App. 107, 117-18, 380 P.3d 1066, rev. den. , 360 Or. 465, 384 P.3d 154 (2016) (determining evidence was cumulative and therefore harmless when other evidence to which defendant did not object, "taken as whole, demonstrated the same content").
The challenged testimony would not likely have affected the jury's verdict in light of other evidence reflecting more directly on defendant's credibility. Notably, the jury watched a video in which defendant lied to a police officer. Then, defendant admitted on the witness stand to having done so. That evidence speaks directly to defendant's truthfulness and would be more germane to her credibility than the redundant evidence of her losing her temper. Indeed, the state focused on the admitted falsehood-not defendant's later conduct-to undermine defendant's credibility. Also, the state bolstered the victim's comparative credibility by minimizing the inconsistencies in her testimony and emphasizing corroborating evidence. Thus, the challenged testimony was not employed for the purpose of undermining credibility and it would have had little bearing in that regard.
Finally, we examine the importance of the evidence to either party's theory of the case. Defendant's strategy did not involve disputing her animosity or aggression but, rather, rested solely on whether she used a weapon. Defendant explicitly acknowledged her "rage" and violent behavior during *426 her testimony and closing arguments. Likewise, the state's strategy relied primarily on other evidence. Although the state provided the challenged testimony to show defendant's mental state, it predominantly cited defendant's threatening messages, and defendant's own characterization of her "blind rage" to prove her intent. For those reasons, evidence of the later encounter was peripheral to both parties' theories of the case and had little likelihood of affecting the verdict by influencing the jury's assessment of defendant's aggression or credibility.
In the end, after considering other evidence and the parties' theories of the case, we conclude that the admission of the challenged testimony, even if assumed to be error, was nonetheless harmless.
Affirmed.

The state referenced the incident one time thereafter, during its cross-examination of defendant. The entire exchange was as follows:
"[DEFENDANT]: * * * I've been scared an entire year.
"[PROSECUTOR]: You have? What about in July?
"[DEFENDANT]: In July?
"[PROSECUTOR]: Yeah. We had a hearing here.
"[DEFENDANT]: Yeah.
"[PROSECUTOR]: You ran outside, you ran up to [the victim], you were cussing at her and you were flipping her off. You were angry at her then.
"[DEFENDANT]: That never happened."

The state had referenced the courthouse encounter briefly in its opening argument, but, except as noted, the incident was not mentioned and did not comprise a significant part of the state's case.