Argued and submitted December 1, reversed and remanded
for new trial March 4, 1981

# STATE OF OREGON,
*Respondent,*

*v.*

# RONNIE RAY VERDINE,
*Petitioner.*

## (No. J-79-2807, CA 17009, SC 27301)

624 P2d 580

Diane L. Alessi, Deputy Public Defender, Salem, argued the cause for petitioner. With her on the briefs was Gary D. Babcock, Public Defender, Salem.

Rudolph S. Westerband, Assistant Attorney, General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, and John R. McCulloch, Jr., Salem.

Before, Denecke, Chief Justice, and Tongue, Lent, Linde and Peterson, Justices.

DENECKE, C. J.

## DENECKE, C. J.

Defendant was convicted of burglary. Prior to trial he filed a motion on several grounds to suppress United States currency taken from defendant. He contended the officer had no probable cause to search or to arrest and search incidental to an arrest. This motion was denied. The defendant also moved for a judgment of acquittal upon the ground there was no evidence to connect the defendant with a crime. This motion also was denied. The Court of Appeals affirmed defendant's conviction. 47 Or App 797, 615 P2d 1209 (1980). We granted review and reverse.

The pertinent facts are as follows. On October 14, 1979, the Rains' home on a wooded hillside in an isolated area with only one other house within a quarter of a mile was burglarized. The Rains had left for the evening around 5:30 p.m., and as they returned around 9:00 p.m. they encountered defendant on a public road, about a quarter of a mile from their house. Nearby, on an embankment, a flashlight was burning. At Rains' request, defendant retrieved the flashlight. Rains was concerned that the light indicated someone was injured. In answer to Rains' expression of concern, defendant said, "Call the police, if you want."

Upon discovering the burglary, Rains contacted the police and explained that "a few twenties, two or three fives, a lot of ones and * * * a bunch of change" were missing. After explaining that the burglar had gained entry by prying open a window, he gave the police a description of the clothing of the defendant and described him as a "hippie type." Rains also characterized the defendant as "spacey, as though on drugs."

The police located defendant under a bridge over Myrtle Creek approximately seven-tenths of a mile from the Rains' home. The officer shined his flashlight on defendant and ordered him out from underneath the bridge. Defendant cooperated fully with the officer after which:

"[Officer Hunter]: I asked him to step up to the car. We went up to the car, and I gave him a pat-down search. In doing that, I felt what, to me, felt like a wad of bills, a lot of

change, and I asked him if he would put it out on the hood of the car."

At this point the officer believed that defendant had been smoking marijuana, since his speech was slurred and he seemed apathetic.

Defendant testified that the officer's gun was drawn as he stepped out from underneath the bridge; the state presented no evidence to the contrary. At the officer's instruction, defendant removed the contents of his pockets. There was $97.83, consisting of three twenties, four fives, twelve ones, sixteen quarters, nine dimes, thirteen nickels and twenty-eight pennies.

After defendant was arrested, taken into custody, and informed of his *Miranda* rights defendant gave an explanation of how he came into possession of the money in his pockets. He had a receipt for $100 which prison authorities had given him upon his release a few days before, as well as a receipt for a $9 bus ticket from Salem to Myrtle Creek. At trial, a witness testified that he had given defendant $50 during a visit the weekend before and that defendant had bought a pint of whiskey and two pair of levis while they stayed together.

■     Assuming without deciding that the officer had the authority to stop and frisk the defendant, it is our opinion that after the officer stopped defendant and frisked him for weapons, he did not have probable cause to arrest defendant and search further to ascertain the contents of defendant's pockets. Before an officer can search for more than weapons, he must have probable cause to arrest and then search incidental to arrest. *State v. Heintz,* 286 Or 239, 246-251, 255-256, 594 P2d 385 (1979); *State v. Gressel,* 276 Or 333, 554 P2d 1014 (1976) (written in terms of probable cause to search rather than arrest).

The facts tending to show probable cause to believe there was stolen property in defendant's pockets and, therefore, he was subject to arrest, are: 1) defendant was seen about a quarter of a mile from the scene of the burglary and was then seven-tenths of a mile from it; 2) defendant was heading away from the scene of the burglary before his apprehension by Officer Hunter; 3) defendant was located

under a bridge, either to stay out of the rain or perhaps to hide; 4) defendant appeared to be disoriented; and 5) defendant had a soft object and some change in his pocket.

The following facts discount the existence of probable cause: 1) since no one had seen the burglar, the description which defendant matched was only that of a passerby; 2) defendant was not placed at the scene of the burglary, but rather a quarter of a mile away from it walking along a public road; 3) the burglary could have occurred any time within a four-hour period; 4) defendant cooperated fully with the officer in coming out from under the bridge and stepping up to the car; and 5) "soft bulges in a person's pockets can be literally thousands of things other than money." *State v. Gressel, supra,* 276 Or at 338.

■ ■ We conclude that there was insufficient probable cause for the officer to "seize" or arrest. The only information that was of any consequence is that defendant was at one point about a quarter of a mile from the scene of the burglary. Defendant's statement to Rains about calling the police also may be relevant. This evidence is, however, insufficient to justify a search of defendant's pockets after it was ascertained that he was not armed. The officer may have had a strong suspicion that defendant was in possession of money taken during the burglary, but a suspicion, no matter how well founded, does not rise to the level of probable cause.

This decision is consistent with that in *State v. Gressel, supra,* in which the officer had even more information than in this case to lead him to a suspicion that defendant illegally possessed something, but this court found that the search of defendant's pockets which produced marijuana was illegal. In *Gressel,* the burglar was seen committing the burglary, and defendant matched the description of him. Defendant, who admitted he was on parole for burglary, was between a quarter of a mile and a half of a mile away from the scene of the burglary. Despite these facts, which would lead the officer to a healthy suspicion that defendant illegally possessed something taken during the burglary, there was no probable cause to search.

As stated, defendant also contends the trial court erred in denying his motion for acquittal on the ground there was insufficient evidence to connect the defendant with the crime. Ordinarily we would decide that issue first, but as shall be seen in this case, it was more orderly to first dispose of the motion to suppress.

■ Initially, in testing the sufficiency of the evidence we must consider the evidence erroneously admitted that should have been suppressed, as well as the other evidence. That procedure is necessary because if all the evidence, including that erroneously admitted, is insufficient the law is clear that the cause cannot be remanded for a new trial. The double jeopardy provision of the United States Constitution prohibits a defendant from being retried under these circumstances. *Burks v. United States,* 437 US 1, 98 S Ct 2141, 57 L Ed2d 1 (1978); *Greene v. Massey,* 437 US 19, 98 S Ct 2151, 57 L Ed2d 15 (1978).

The test we must apply to determine whether the evidence is sufficient is that required by the due process clause of the Fourteenth Amendment as interpreted by the United States Supreme Court in *Jackson v. Virginia,* 443 US 307, 319, 99 S Ct 2781, 61 L Ed2d 560, reh den 444 US 890, 100 S Ct 195, 62 L Ed2d 126 (1979):

> "Instead the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. * * *"

■■ We conclude that all the evidence, including the money found in defendant's pockets, is sufficient to support a conviction. The defendant was seen within a quarter of a mile of the Rains' home a short time after the burglary could have occurred and there is only one other house within a quarter of a mile from the Rains' house. He was found under a bridge where he could have gone to hide. In his pockets the defendant had bills in the approximate number of the denominations of the bills stolen and 66 coins which correspond with Mr. Rains' description that "a bunch of change" had been stolen. In our experience, 66 loose coins is a much larger number of coins than a man usually carries. The evidence is all circumstantial; however, circumstantial evidence, alone, is sufficient to

support a conviction, even for murder. *State v. Krum-macher,* 269 Or 125, 523 P2d 1009 (1974).

■     We are also of the opinion, however, that without the erroneously admitted evidence, the money found in defendant's pockets, there is insufficient evidence from which "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia, supra,* at 443 US at 319. By so deciding we pose the question whether we can and should remand the case for a new trial and give the state an opportunity to introduce other evidence that would cure the deficiency in its case, or are we required or should we hold that the state has had one opportunity to convict the defendant with admissible evidence, it failed and it is prohibited from again trying defendant.[1]

The decision in *Greene v. Massey, supra,* 437 US at 26, footnote 9, specifically stated that no opinion was expressed upon this issue. Inasmuch as *Greene v. Massey, supra,* 437 US at 24, held the double jeopardy prohibition of the Fifth Amendment was applicable to state proceedings, we must first determine if it bars a new trial under the circumstances present in this case. We are of the opinion it does not.

As stated, *Burks v. United States, supra,* 437 US 1, held that when an appellate court holds that the trial court erred in denying a motion for acquittal made on the ground that the evidence was insufficient to prove the defendant committed a crime, the defendant cannot be retried. The rationale of this decision is that the trial court should have granted the motion for acquittal; if it had the defendant could no longer be retried; the result should be no different because of the error of the trial court. *Sapir v. United States,* 348 US 373, 75 S Ct 422, 99 L Ed 426 (1955), concurring opinion of Justice Douglas.

---

[1] In *State v. Harris,* 288 Or 703, 609 P2d 798 (1980), we reversed a conviction because certain evidence was improperly received and without it there was insufficient evidence to convict. We reversed and remanded for new trial. The defendant filed a petition for rehearing contending that because we found insufficient admissible evidence to convict we could not remand for a new trial. We denied the petition without opinion. There was no motion for acquittal in that case.

■    On the other hand, the Fifth Amendment does not bar the state from retrying a defendant whose conviction has been set aside because of an error made during trial. *United States v. Ball,* 163 US 662, 16 S Ct 1192, 41 L Ed2d 300 (1896). The rationale for such holding found in *Greene* is more general:

> " '* * * It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction.' " 437 US at 15.

If the trial court had correctly granted the defendant's motion to suppress the money, we do not know whether the evidence introduced by the state would have been sufficient to convict because we do not know what, if any, evidence the state could or would have introduced as a substitute for the money, or whether the evidence may have been available to support a verdict of guilty. In this respect the rationale of *Burks v. United States* does not apply.

The argument has been made that the state should have only one opportunity to try a defendant and should be required to introduce every piece of relevant and competent evidence, no matter how cumulative; therefore, the court would be given one opportunity to rule whether from all the evidence available there is sufficient admissible evidence to convict. *State v. Boone,* 284 Md 1, 18, 393 A2d 1361 (1978), dissenting opinion. In our opinion this is not a desirable practice. It would require the state to make the unreasonable assumption that the trial court was in error on every occasion it admitted evidence over the defendant's objection. If the defendant objected to any evidence offered by the state, the state would be placed in the dilemma of either having to withdraw the offered evidence or having it received over objection and then being required to choose between relying on the correctness of the trial court's ruling or ignoring the received evidence and putting on whatever other evidence it had to prove the same fact. Not only is this completely contrary to the usual procedure for trying cases, but it would in some cases greatly lengthen the trial, which in addition to being time consuming and

expensive, would further harass the defendant, an injury the double jeopardy prohibition is intended to limit.[2]

If the state should only be given one opportunity to present sufficient admissible evidence to convict, logically, it should only be given one opportunity to correctly charge a defendant and a failure to do so would prevent a second trial. However, that is not what the United States Supreme Court has held. In *United States v. Ball, supra,* 163 US 662, the defendant was charged by an indictment which the United States Supreme Court, when reviewing the defendant's conviction, held insufficient. However, the cause was remanded for another trial.

■      We hold that the Fifth Amendment does not bar a second trial of the defendant.

For the reasons we found persuasive in interpreting the Fifth Amendment, we also hold that under Art I, § 12 of the Oregon Constitution, the ban on double jeopardy, the defendant can be retried.

There is a division in the decisions of other courts on this issue. *United States v. Mandel,* 591 F2d 1347 (4th Cir 1979); *State v. Boone, supra,* 284 Md 1; *State v. Lamorie,* 610 P2d 342 (Utah 1980); *State v. Wood,* 596 SW2d 394 (Mo 1980); *People v. Sisneros,* 44 Colo App 65, 606 P2d 1317 (1980), held as we do. To the contrary are *United States v. Santora,* 600 F2d 1317 (9th Cir 1979); *State v. Alexander,* 281 NW2d 349 (Minn 1979); *State v. Bannister,* 60 Hawaii 658, 594 P2d 133 (1979); *Sloan v. State,* 584 SW2d 461 (Tenn Crim App 1979).

Reversed and remanded for new trial.

**LINDE, J.,** concurring in part and dissenting in part.

I agree that the conviction must be reversed, but I am not persuaded by the majority's reasons for ordering a new trial.

---

[2] For example, a careful prosecutor, after evidence was received over the defendant's objection, might seek to have such evidence admitted in other ways which might unfairly put the defendant in the disadvantageous position of having prejudicial evidence unfairly repeated.

There is no doubt that when the state's evidence against a defendant does not suffice to allow a conviction, the defendant is entitled to a judgment of acquittal, and that he then may not again be put on trial for the same offense. ORS 136.445 specifically provides:

> "In any criminal action the defendant may, after close of the state's evidence or of all the evidence, move the court for a judgment of acquittal. The court shall grant the motion if the evidence introduced theretofore is such as would not support a verdict against the defendant. The acquittal shall be a bar to another prosecution for the same offense."

It also is agreed that the same result follows when the insufficiency of the evidence to support a verdict against the defendant is decided on appeal. An appellate finding that the evidence is insufficient for conviction is equivalent to holding that defendant's motion for acquittal should have been granted, which bars a new trial.

These rules carry out the constitutional prohibition against putting any person in jeopardy twice for the same offense. Or Const art I, § 12, U S Const amend V. Although the issue here is once again presented as one of federal law, citing opposing projections by different courts of the United States Supreme Court's eventual view under the fifth amendment, all we know on that score is that the federal question is undecided. *Greene v. Massey,* 437 US 19, 26 n. 9, 98 S Ct 2151, 57 L Ed 2d 15 (1978). We are, however, responsible for correctly analyzing the law of Oregon.

Sufficient evidence for conviction of course means sufficient evidence properly admitted at the trial. A trial court in ruling on a motion for a judgment of acquittal under ORS 136.445, *supra,* obviously will not count against a defendant evidence that the court has excluded. Nor can the trial court consider evidence which the court concludes was erroneously admitted over defendant's objection. Upon reaching this conclusion, the court necessarily must disregard that evidence in deciding whether the remaining evidence suffices to support a conviction.

Why should not the same rule govern when an appellate court decides whether a motion for a judgment of acquittal should have been granted?

The majority distinguishes between reversal for "trial errors," which calls for a new trial, and reversal for insufficient evidence, which calls for acquittal and bars another prosecution. The distinction makes sense in the usual situation in which, irrespective of the error, there is sufficient evidence to support a conviction. But in cases like the present, in which the conviction depends on evidence that the trial court should have excluded from consideration in ruling on the motion for judgment of acquittal, it simply begs the question to characterize defendant's appeal as based on procedural error, i.e. the admission of inadmissible evidence, rather than on substance, i.e. the right to an acquittal for lack of sufficient proper evidence of guilt.

Defendant's claim is not so easily dismissed by such a conclusory characterization. This may perhaps best be illustrated by paraphrasing a hypothetical defendant's contentions. His position vis-a-vis the state may be summarized as follows:

> I am not guilty of this charge, and you do not have enough evidence even to take the case to the jury. The key items on which you rely are not legal evidence at all and must be excluded from consideration. Even if you disagree, you had better anticipate that I am right, for I shall certainly move for a judgment of acquittal if you have nothing more, and I am entitled not to be prosecuted again on a new set of evidence.

Similarly, vis-a-vis the trial court, such a defendant's position from the outset is that the state is seeking to prosecute him upon statements or exhibits that are not legal evidence, that the court is bound to exclude these items from consideration, and that he will be entitled to a final and conclusive judgment of acquittal unless the state introduces other, legally admissible evidence sufficient to support a contrary verdict beyond a reasonable doubt.

These are substantive contentions. They go to the heart of the principle that the state is limited to one and only one prosecution to prove a person guilty of a single offense. The motion for judgment of acquittal is an assertion that the state's evidence, as a matter of law, falls short of the legally required proof. Of course, if the court has previously admitted inadmissible evidence over defendant's objection, the motion amounts to a reassertion that

this evidence cannot properly be counted in ruling on the motion for judgment of acquittal. Of course, also, the asserted error in admitting the evidence is necessarily assigned on appeal as a predicate for the erroneous denial of a judgment of acquittal. But that does not turn the defendant's appeal on the substantive ground of insufficient evidence, which bars a second trial, into a mere claim of a procedural error in the trial, which calls for correct retrial.

The majority does not address the issue as one of legal principle but rather as if it were a mere pragmatic choice between alternative trial procedures. According to the majority, if the prosecution could not rely on the trial court's ruling admitting the prosecution's evidence over objection, it would be placed in a "dilemma." The alleged dilemma is whether to put on additional evidence "to prove the same fact." This will sometimes lengthen the trial, which is "time consuming and expensive." It is even said to "harass the defendant" by introducing more evidence of his guilt than might be needed, which is said (not without irony, in my view) to contravene the policy of the double jeopardy clauses.

I would have thought that the policy of the guarantee against double jeopardy, and of the Oregon statutes that were written to carry it out, is to make the state put on in a single trial whatever evidence it has that a person whom it charges with a crime has in fact committed that crime. If the evidence is insufficient, the prosecution does not get a second try. That is a central principle of the guarantee.

While I do not agree that constitutional principles are properly measured by their advantages or disadvantages for judicial administration, I also see no advantage in piecemeal trials on challenged evidence, followed by an appeal and a retrial to see whether the prosecution has additional evidence in reserve, as compared with placing before the court in the first trial sufficient evidence so that the appellate court can determine that even without the improperly admitted evidence a conviction upon a second trial could be sustained. There is no "dilemma." The prosecution need not make an "unreasonable assumption" that the trial court erred in admitting evidence, as the majority says.

Particularly in the common situation of pretrial hearings on the admissibility of challenged evidence, there is no persuasive reason to allow the state a second try to prove its case by legally competent evidence. The prosecution knows what gaps in its case will entitle the defendant to a judgment of acquittal if his objections prove to be valid. The prosecution either has unobjectionable evidence of the same element to be proved or it does not. If it does, I doubt that many prosecutors omit such additional evidence unless they are absolutely sure of their legal ground. Whether the prosecution does have additional, unobjectionable evidence or whether it does not, in either event there is no reason to put the defendant (and the judicial system) to the trouble and expense of an appeal and the needless burdens and risks of a second trial, by which time perhaps the defendant may no longer have available all the defense witnesses or testimony presented at the first trial. In short, if in a criminal trial there is alternative evidence to fill the gap in the prosecution's case asserted by the defendant, there is no justification for holding it back.

Perhaps it is sometimes more convenient to do just that, and to bring out the additional evidence for the first time on a second trial if the original evidence is held to have been wrongly admitted. But the object of the guarantee against double jeopardy is not convenience, nor is it concerned about the prosecution's "right to rely" on trial court rulings. If this court decides that the law does not permit retrials when the exclusion of wrongly admitted evidence leaves insufficient evidence to support a verdict, then prosecutors will have no reason for such "reliance." What ORS 136.455 and the double jeopardy clauses assure every person is that if the prosecution does not introduce sufficient legally proper evidence of his guilt to sustain a verdict, he is entitled to a judgment of acquittal and freedom from another prosecution for the same offense.

Accordingly I would not remand this case for a second trial.

Lent, J., joins in this concurring and dissenting opinion.