Argued and submitted November 25, 1987, affirmed March 9, 1988

STATE OF OREGON,
*Respondent,*

*v.*

DARRELL DWAYNE KNAUB,
*Appellant.*

(C85-12-35132, C86-08-33902;
CA A43082 (Control), CA A43083)
(Cases Consolidated)

750 P2d 1206

Gary D. Babcock, Public Defender, Salem, argued the cause for appellant. With him on the brief was Steven V. Humber, Salem.

Michael C. Livingston, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Joseph, Chief Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Defendant seeks reversal of his conviction for burglary in the first degree and the resulting revocation of his probation on a previous conviction for criminal trespass in the second degree. We affirm.

In August, 1986, at 8:00 p.m., Lenoir saw a man run out of his next door neighbor's house, jump a porch railing and continue out through the back yard. The man was carrying a "brown and colored" purse. Lenoir ran to the back yard to see what the man was doing, but there was no one there. He then went to the front of the house and contacted the residents, who told him that no one had permission to be inside and that a brown and colored purse was missing. The police were called, and two officers arrived separately within four minutes of each other. Officer Payne was the first to meet Lenoir. While *en route* to the scene, and before receiving any suspect description, Officer Hash, who was driving a marked patrol car, saw defendant and a female companion, Tucciarone, walking together approximately three blocks from the crime scene. They were walking normally. There was no one else walking in the area. Hash noticed that defendant was not wearing a shirt, that he wore tan pants and that he had long stringy hair and a scraggly beard. When Hash arrived at the victim's residence, Lenoir described the suspect as a male with brown hair past his shoulders, having facial hair and not wearing a shirt. Hash told Payne and Lenoir that he believed he had seen the suspect, and he then left the burglary scene in his car to find defendant. Hash did not know whether anything had been taken in the burglary.

Hash found defendant and Tucciarone four to six blocks from the crime scene, walking very fast away from the scene, unlike when he had seen them earlier. Hash pulled up behind them and told them that they were under arrest. Tucciarone had two purses under her left arm or over her left shoulder. Both defendant and Tucciarone asked why they were under arrest. When Hash responded "burglary" and stared at the two purses, Tucciarone said that she had found "the purse." After Payne arrived, the officers seized the purses, placed both suspects in handcuffs and took them back to the crime scene in separate patrol cars. Hash remained in the car with defendant while Lenoir identified defendant. Lenoir

had observed defendant in handcuffs when he was removed from the car for identification and for a further search. At the scene of the crime, after Hash learned from Payne that some property was still missing after the search of Tucciarone, the contents of defendant's pockets were searched. The officers found a yellow hospital release slip on which was written the victim's name in defendant's back pocket.

Defendant's first assignment of error is that the trial court erred in failing to suppress the evidence of the hospital release and the purse as the fruits of the illegal arrest of defendant. An arresting officer must have a substantial objective basis for believing that, more likely than not, a felony has been committed and that the person to be arrested has committed it. *See* ORS 133.310(1)(a) and ORS 131.005(11). Defendant does not contend that Hash lacked probable cause to believe that a felony had been committed, but that Hash lacked probable cause to believe that defendant had committed it.

■ Defendant argues that—on the basis of Lenoir's initial description[1]—Hash could have had no more than a suspicion that he was the burglar. He relies on *State v. Verdine,* 290 Or 553, 624 P2d 580 (1981), and *State v. Gressel,* 276 Or 333, 554 P2d 1014 (1976). In *Verdine,* the Supreme Court did not find probable cause to support the defendant's arrest when the only fact of consequence was the proximity of the defendant to the scene of the crime. In *Gressel,* there was no probable cause to arrest when the defendant was close to the scene and only fit the general description of the burglar.

Hash had more than the proximity of defendant and a general description on which to rely. An eyewitness had described the burglar in detail. Hash had seen such a person within a few minutes of the crime and within three blocks of the scene. He had seen no one else in the area. That defendant was shirtless was uncommon, even for a summer evening. Defendant matched the description in more than a "general" manner. After hearing the description, Hash again located defendant, this time walking rapidly away from the scene.

---

[1] We agree with defendant that the presence of the two purses cannot serve as a basis for probable cause. At the time of the arrest, Hash did not know if anything had been taken in the burglary.

Those facts gave Hash an objective basis to believe that defendant had committed the crime, and there was no error in refusing to suppress the evidence of the hospital release slip taken from defendant.

■    Defendant next argues that the evidence of the purse should be suppressed. He contends that the arrest and search of Tucciarone were illegal because, at the time of the arrest, Hash had no information which would give rise to probable cause to believe that she was involved in the burglary. He urges that, under *State v. Tanner,* 304 Or 312, 745 P2d 757 (1987), the seizure of the purse was an infringement of his privacy interests.

We conclude that it is unnecessary for us to address whether *Tanner* dictates that the evidence should have been suppressed. The hospital release slip with the victim's name on it was in defendant's back pocket at the time of his arrest. In the light of that overwhelming evidence against him, even if it was error to admit the evidence of the purse, the error was harmless. *State v. Hansen,* 304 Or 169, 743 P2d 157 (1987).

■■    We turn to defendant's argument that the court erred in failing to suppress the eyewitness identification. Defendant argues that Lenoir's out of court identification was made on an overly suggestive basis and tainted any in-court identification. If an identification is shown to be the product of an unduly suggestive procedure, the prosecution must satisfy the court that the in-court identification has a source independent of the illegal one. *State v. Classen,* 285 Or 221, 232, 590 P2d 1198 (1979). The relevant factors are: (1) the opportunity to view the suspect, (2) degree of attentiveness, (3) accuracy of the description, (4) the level of certainty and (5) the lapse of time between the original observation and the subsequent identification. *State v. Classen, supra,* 285 Or at 232. Lenoir gave the police a detailed description of the burglar within minutes of the crime.[2] He testified that he was sure that defendant was the man whom he had seen leaving his neighbor's home, because defendant was very distinct, the view Lenoir had of his neighbor's home was very clear and the lighting was "real bright." We conclude that the in-court identification has

---

[2] The description Lenoir gave to Payne was much more detailed than the description that Hash was given.

a reliable source independent of the out-of-court identification and that it was not error to receive it.

Finally, because we affirm the conviction, revocation of defendant's probation was proper.

Affirmed.