Argued and submitted November 3, 1989, affirmed March 7, 1990

In the Matter of
Christopher Dahl, a Child.

STATE ex rel JUVENILE DEPARTMENT OF
MULTNOMAH COUNTY,
*Respondent,*

*v.*

DAHL,
*Appellant.*

(88-936; CA A50639)

788 P2d 459

Richard D. Cohen, Portland, argued the cause and filed the brief for appellant.

Vera Langer, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

Child appeals an order of the juvenile court that he is within its jurisdiction because of conduct that, if done by an adult, would constitute burglary in the first degree and theft in the first degree. ORS 164.225; ORS 164.055. He argues that there was insufficient evidence to support the court's finding that he had committed the alleged offenses. We affirm.

The victim's house on S.E. 81st in Portland was burglarized on the morning of July 7, 1988. The victim had left the house at about 7:40 a.m. At 8:36 a.m., the police received a call about a suspicious white car that was parked on S.E. 77th, a few blocks from the victim's house. At 8:50 a.m., they found a white Ford Escort at that location and attempted to locate the persons reported to be seen leaving the car, white males about eighteen years old, with long hair and dark clothes, walking east. They returned to the location of the car at 9 a.m., and it was gone. It was later determined that a white Ford Escort was being driven by Arthur, one of child's companions on the morning of the burglary.

At about the same time, the police received a call from a boy who lived in the neighborhood, reporting that, between 8:30 and 9 a.m., he and his cousin had seen three older kids with long hair, wearing dark clothes, running down the street with a gun case, a suitcase and a large basket full of items. The boys reported that they followed them for a few blocks and saw them hide the items that they were carrying in the bushes. They took the police to that location, where rifles, hand guns, knives, ammunition, jewelry and a briefcase were found. The police soon learned that a house on S.E. 81st had been burglarized. At 9:45 a.m., they stopped child and a companion, Wise, at a nearby location, because they believed that the two fit the description of the persons whom the boys had seen. They patted them down and found a 12-inch bowie knife under child's coat. The knife was identified as having been taken from victim's house.

Child testified that he lives near the house that was burglarized. He said that he had spent the night before the burglary at a friend's house in the same neighborhood and that Arthur was also there. He testified that he left the house at 7:15 a.m., went to another person's house, then went to a nearby school yard between 7:30 and 8 a.m. At the school yard

he met Arthur, who was driving a white Ford Escort and who gave him the knife as a replacement for one of his that Arthur had broken. Child said that he left the school at 8 a.m. and that he and Wise were on their way to a friend's house when the police stopped them.

Child argues that there was insufficient evidence from which to find beyond a reasonable doubt that he had committed acts that would constitute burglary and theft in the first degree. We hold that the evidence was sufficient and, on *de novo* review, agree with the juvenile court's findings. *See State v. Verdine,* 290 Or 553, 624 P2d 580 (1981); *State v. Devlin,* 249 Or 678, 439 P2d 1008 (1968). Approximately an hour after the burglary, child was found a few blocks from the house that was burglarized in possession of a knife taken in the burglary. He admits that he had been in the area at the time. Further, his explanation of how he got the knife was not accepted by the trial court, and we do not find it credible. He also admits that he was with Arthur, who was driving a car that matched the description of the one parked near the burglarized house. The police stopped child and his friend because they fit the description of the persons seen near the burglarized house.

Child argues that the evidence proves that he could not have been one of the burglars, because the suspects were described as having dark hair, but he had long blonde hair. However, although the neighbor boy who testified could not definitely identify child as one of the persons that he had seen, his description did not exclude child as one of the burglars. The boy stated that the persons that he saw "mostly had black hair." When asked if they all had black hair, he said that he was not sure. He expressed uncertainty about whether child was one of the persons that he had seen. However, it is also apparent from his testimony that he did not want to be involved in the case, because the boys involved in the burglary lived in his neighborhood and he was somewhat afraid of them.

The circumstantial evidence, including the inferences that may be drawn, was sufficient to conclude beyond a reasonable doubt that child committed acts that, if done by an adult, would constitute burglary in the first degree, and we so find. Because firearms were taken in the burglary,

we also find that he committed acts that would be theft in the first degree. ORS 164.055(1)(d). The trial court correctly found that it had jurisdiction over child.[1]

Affirmed.

---

[1] Child's other assignments of error are without merit.