GARRETT, J.
*246 Defendant appeals a judgment of conviction for first-degree kidnapping, first-degree attempted sexual abuse, and fourth-degree assault. The charges arose from an incident in which defendant attacked a woman while she was jogging and pushed her into a ditch; the victim fought him off and defendant left the scene. Although defendant did not say or do anything during the attack that unequivocally suggested a sexual purpose, the state alleged that defendant had intended to subject the victim to sexual contact. In support of that theory, the state offered evidence of two handwritten notes, both describing a desire to engage in violent sexual acts, that defendant wrote and left for two other women, also strangers to him. The trial court admitted that evidence over defendant's objection for the purpose of showing the sexual motive for defendant's attack on the victim. On appeal, defendant assigns error to that ruling. Defendant also assigns error to the trial court's denial of his motion for a judgment of acquittal (MJOA) on the attempted sexual abuse count, arguing that the record contained insufficient evidence to prove that he intended to sexually abuse the victim when he attacked her.
We agree with defendant that the trial court erred by admitting the notes. As explained below, the two notes were not admissible as noncharacter evidence of "motive," as that term is used in OEC 404(3). Rather, the logical relevance of the notes depends on a character-based inference, i.e. , that defendant has a propensity to commit acts of sexual violence against female strangers. On appeal, the state argues that, even so understood, the evidence was admissible propensity evidence under OEC 404(4) and State v. Williams , 357 Or. 1, 346 P.3d 455 (2015). However, the state did not offer the notes as character evidence below, and we decline to consider that argument for the first time on *890 appeal. Accordingly, we reverse and remand. With respect to defendant's second assignment of error, we conclude that the trial court did not err in denying his MJOA, and defendant is not entitled to outright reversal on the attempted sexual abuse count.
We review a trial court's determination that evidence is relevant for legal error, *247 State v. Titus , 328 Or. 475, 481, 982 P.2d 1133 (1999), "in light of the record that was before the court at the time it made its decision," State v. Jones , 285 Or.App. 680, 682, 398 P.3d 376 (2017). Because defendant appeals from a judgment of conviction, "we state the relevant background facts in the light most favorable to the state." State v. Woods , 284 Or.App. 559, 561, 393 P.3d 1188, rev. den. , 361 Or. 801, 400 P.3d 926 (2017).
On December 27, 2012, the victim, M, went for a run near her home. She wore a jacket and jogging pants, and she listened to music while she ran. As she was running down the sidewalk, defendant tackled her from behind, and she blacked out. She could feel defendant "dragging" her, and when she became fully alert, she was face down in a shallow ditch near the sidewalk. The ditch was next to an area with tall grass, brush, and trees. M was able to flip her body over, and she began to fight defendant, who stood over her and held one of her hands down. Using her other hand, M tried to hit defendant and then shoved two of her fingers into his mouth. At that point, defendant stood up and ran away. As a result of the attack, M suffered abrasions, cuts, and an injury to her shoulder.
Defendant was indicted on one count of first-degree kidnapping, ORS 163.235 ; one count of attempted first-degree sexual abuse, ORS 163.427 and ORS 161.405 ; and one count of fourth-degree assault, ORS 163.160. With respect to the attempted sexual-abuse count, the state alleged that defendant "did unlawfully and intentionally attempt to subject [M] to sexual contact by means of forcible compulsion."
M testified at trial that she could not identify her attacker. Defendant's theory of defense was that police had arrested the wrong person. Defendant also argued that, regardless of who attacked M, there was no evidence of any intent to subject M to sexual contact.
The state presented no direct evidence of actual or attempted sexual contact. The state's theory was that the victim had fought defendant off before he could make his sexual purpose unmistakable. As circumstantial evidence of defendant's intent during the assault, the state offered two notes that defendant had left on cars in two different Target *248 parking lots. Both notes were left for women who defendant did not know. One of the notes was left on December 17, 2012, 10 days before the attack, and the other was left approximately two months earlier. The two notes are very similar: Both are written in the second person (using the words "you" and "your"), both graphically describe the women's bodies, and both express, in nearly identical terms, a desire to engage in anal intercourse with the women in a way that would cause them pain. It is undisputed that defendant wrote the notes; however, there is no evidence in the record that he ever approached or tried to make physical contact with either woman.
At defendant's trial, the state offered the notes to prove that defendant's motive in attacking M was to subject her to forcible sexual contact. The state made clear that it was offering the notes "solely" to prove defendant's "intent," explaining its need for the evidence as follows:
"The DNA evidence is very powerful and there's some corroboration that backs it up, so identity is going to be strong. But * * * defendant's intent in terms of sexually assaulting [M], although some may think it's obvious, there really isn't any hard evidence of that. * * * [M] fought [defendant] so ferociously and so courageously that [defendant] didn't have a chance to get his hand actually on her breasts or genitalia or buttocks in a way that would allow us to definitively by his actions determine that he-and he didn't-likewise, he didn't utter any words to her. He didn't say anything that would clearly allow me to argue that this was a sexual assault or an attempted sexual assault."
*891 The state later characterized the notes as a clear expression of defendant's intent to sexually assault a female stranger.
Defendant argued that the notes were irrelevant. See OEC 401 (defining relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").[1]
*249 Defendant also argued that, even if the notes have some relevance, under OEC 403, any probative value was substantially outweighed by the danger of unfair prejudice. Defendant reasoned that the state was attempting to use the notes to persuade the jury that defendant is a "creep" and a "scum bag," permitting the jury to "jump to [the] conclusion" that defendant had a sexual purpose "when there's no evidence in this actual case" of sexual intent.
The trial court admitted the notes under OEC 404(3) for what it called the "noncharacter purpose" of explaining "what conscious purpose or what motive, if any, that [defendant] had in engaging in a kidnapping and assault"-in other words, "to distinguish whether or not the goal was sexual assault or simply a physical assault." The court reasoned that there was a "great need for the evidence because there was no relationship between defendant and the victim," and there was "really no other way for [the jury] to understand in the context of these facts how or why the occurrence might have happened."
At the close of the state's evidence, defendant moved for a judgment of acquittal on the attempted sexual abuse charge. Defendant argued that, up until the court allowed the notes into evidence, the state had not "present[ed] one piece of circumstantial or direct evidence as to the intent of the person who committed this crime," and that there was "absolutely nothing in the record * * * to suggest that" the motive was sexual abuse. With regard to the notes in particular, defendant argued that the "fact that [defendant] is a heterosexual that likes sex cannot be used or even associated with trying to discern the motive [for the attack]."
The trial court denied defendant's motion. The court reasoned that a reasonable juror could conclude that defendant's purpose was to commit a sexual assault "because of the very particular circumstances in which the attack occurred," including the evidence that defendant had attempted to move M to a "place of secretion off the side of the road," and the lack of any evidence that M was wearing a *250 watch, jewelry, or other items of obvious value that could have been the object of a robbery.[2]
On appeal, defendant largely reprises the arguments that he made below.
We begin with defendant's first assignment of error, in which he challenges the trial court's admission of the notes for the noncharacter purpose of proving motive under OEC 404(3). Defendant contends that the notes are not probative of motive under OEC 404(3) because his mere expression of a desire for "rough anal sex" with the two recipients of the notes, without evidence of actual or attempted physical contact with those two women, "cannot reasonably support any permissible inference regarding defendant's specific intent during the later physical attack." The state, for its part, argues that the notes "gave rise to a reasonable inference that defendant was generally interested in having rough, nonconsensual sex with women he did not know" and that that inference "logically would make it more likely that he intended to have sexual contact with [M] (a female stranger) when he tackled her-an act that otherwise had no obvious purpose."
*892 When evaluating the admissibility of other-acts evidence, we consider "the theories of relevance that the state advanced below, on which the trial court admitted the evidence." Jones , 285 Or.App. at 688, 398 P.3d 376 ; see State v. Baughman , 361 Or. 386, 404, 393 P.3d 1132 (2017) ("If other acts evidence is not proffered to prove a defendant's character, but instead is offered for a nonpropensity purpose, then analysis under OEC 404(4) is unnecessary; the evidence 'may be admissible' under the second sentence of OEC 404(3)."). Here, because the trial court admitted the notes for a noncharacter purpose (as motive evidence relevant to prove specific intent), and the state did not purport to offer the notes as character evidence below, we consider whether the trial court properly concluded that the notes were relevant as noncharacter evidence of motive under OEC 401 and OEC 404(3). In *251 determining whether other-acts evidence is relevant for a noncharacter purpose, we draw upon " 'settled principles' of relevance embodied in OEC 404(3) and case law construing that provision." State v. Clarke , 279 Or.App. 373, 382, 379 P.3d 674 (2016) (quoting State v. Turnidge , 359 Or. 364, 434, 374 P.3d 853 (2016), cert. den. , --- U.S. ----, 137 S.Ct. 665, 196 L.Ed.2d 554 (2017) ).
OEC 404(3) provides that "[e]vidence of other crimes, wrongs or acts" may be relevant for noncharacter "purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evidence of uncharged misconduct is admissible for a noncharacter purpose when "the chain of logical relevance connecting the evidence to the 'other' fact or facts does not ultimately rely on an inference relating to the defendant's character or propensities." State v. Johnson , 340 Or. 319, 338, 131 P.3d 173 (2006). The state, as the proponent of the evidence, had "the burden of demonstrating relevance and, under OEC 404(3), that the evidence is 'probative of something other than [a] disposition to do evil.' " State v. Wright , 283 Or.App. 160, 170, 387 P.3d 405 (2016) (quoting State v. Garrett , 350 Or. 1, 6, 248 P.3d 965 (2011) ).
Our case law defines "character" as a person's "tendency to act in a certain way in all the varying situations of life." State v. Marshall , 312 Or. 367, 372, 823 P.2d 961 (1991) (internal quotation marks omitted); see also State v. Johns , 301 Or. 535, 548, 725 P.2d 312 (1986) (defining "character" for purposes of OEC 404(3) to mean "disposition or propensity to commit certain crimes, wrongs, or acts"); David P. Leonard, The New Wigmore: Evidence of Other Misconduct and Similar Events § 8.3, 493-94 (2009) ("Character is thought to be a generalized tendency to act in a particular way, caused by something internal to the actor that arises from that person's moral bearing."). Thus, if the logical relevance of the notes depended upon an inference that defendant acted consistently "with a particular character trait" when he attacked M, the notes are not admissible for a noncharacter purpose. Cf. State v. Hampton , 317 Or. 251, 259, 855 P.2d 621 (1993) (evidence offered for "propensity purposes" is evidence that is offered "to show that defendant *252 acted consistently with a particular character trait" in committing the charged offense).
"Evidence is relevant to prove motive if it tends to show why the defendant committed the charged crime." State v. Edwards , 282 Or.App. 328, 332, 385 P.3d 1088 (2016), rev. den. , 361 Or. 801, 400 P.3d 927 (2017) (emphasis in original; internal quotation marks and brackets omitted); see Hampton , 317 Or. at 257 n.12, 855 P.2d 621 (describing "motive" as "a cause or reason that moves the will and induces action, an inducement which leads to or tempts the mind to commit an act" (internal quotation marks omitted) ). To determine whether motive evidence is relevant, "we look to whether the state has showed 'some substantial connecting link' " between the uncharged misconduct and the charged offense. Wright , 283 Or.App. at 171, 387 P.3d 405 (quoting Turnidge , 359 Or. at 451, 374 P.3d 853 ). To do so, we must engage in "detailed consideration of the evidence in the record" and " 'evaluat[e] the contested evidence in light of the circumstances of the crime.' " Id. at 172, 387 P.3d 405 (quoting Turnidge , 359 Or. at 451, 374 P.3d 853 ); see also State v. Guzek , 322 Or. 245, 251, 906 P.2d 272 (1995) ( "[R]elevancy is not an inherent characteristic of any item of *893 evidence but exists only as a relation between an item of evidence and a matter properly provable in the case." (Internal quotation marks omitted.) ).
Courts must be cautious in admitting evidence that is ostensibly for the purpose of showing "motive," but that may, in reality, depend for its relevance on an inference about the defendant's character. See Hampton , 317 Or. at 257 n.12, 855 P.2d 621 ("[C]ourts must be on guard to prevent the motive label from being used to smuggle forbidden evidence of propensity to the jury." (Internal quotation marks omitted.) ); see also 1 McCormick on Evidence § 190 (7th ed. 2016) ("The motive theory should not apply * * * when the 'motive' is so common that the reasoning that establishes relevancy verges on ordinary propensity reasoning or when 'motive' or 'intent' is just another word for propensity." (Footnotes omitted.) ). We agree with the observation that a crucial difference between permissible motive-based reasoning and a character-based theory of motive is that the former "assume[s] that a motive might exist because any person might possess one under those specific circumstances. The tendency to have such a motive is simply human ; it does not derive from a trait *253 of character specific to the person involved in the trial." Leonard, The New Wigmore § 8.3 at 496 (emphases in original). By contrast, character-based reasoning is "based on inferred behavioral disposition or propensities," and it relies upon "a chain of inferences that employs the evidence to establish that the person (1) is more inclined to act or think in a given way than is typical, and (2) is therefore more likely to have acted or thought that way on a particular occasion." 1 McCormick on Evidence § 186.
When the asserted connection between the charged offense and the other-acts evidence would be merely conjectural without resort to character-based inferences, such evidence is not admissible as noncharacter motive evidence. For example, in Garrett , the defendant was charged with murder, and the state sought to admit evidence that, 17 months after the murder, the defendant had assaulted a different woman as part of a plan to rob her of drugs that he believed she was keeping in her home. 350 Or. at 4-5, 10-11, 248 P.3d 965. Although the murder victim was known for selling small amounts of marijuana, nothing was taken from her residence, including cash and a checkbook, and the police found only a small amount of drugs and paraphernalia in her home. Id. at 3-4, 248 P.3d 965. On review, the Supreme Court concluded that evidence of the assault was not relevant for the purpose of establishing the defendant's motive for the murder under a noncharacter theory of relevance because there was no evidence corroborating the state's theory that the defendant was motivated to commit robbery or burglary in connection with the murder. Id. at 10-11, 248 P.3d 965. Similarly, in State v. Flett , 234 Or. 124, 127-28, 380 P.2d 634 (1963), the Supreme Court held that the trial court erred in admitting evidence of marital infidelity in a murder trial when there was evidence that the defendant and the victim regularly drank to excess and quarreled, and there was no evidence that the hostility provoking the murder "had anything to do with marital fidelity."
As we explained in Wright , " Flett and Garrett demonstrate that the mere possibility that the same motive that caused the earlier crime or act also caused the charged crime is not enough to make evidence of the prior act relevant." 283 Or.App. at 174, 387 P.3d 405 (emphasis added). Accordingly, we held in Wright that evidence that the defendant had threatened *254 the victim several years prior to the charged assault was not relevant for the noncharacter purpose of proving motive "[g]iven the lack of information about the circumstances surrounding the threat, the lack of any suggestion of a particular motive in the circumstances of the assault, and the lack of support for an inference that defendant's general hostility continued over the intervening few years." Id. at 177-78, 387 P.3d 405 (internal quotation marks omitted).
By contrast, when some aspect of the charged offense confirms that there is a logical connection between the other-acts evidence and the charged offense, and that connection does not depend on a character-based inference, the other-acts evidence may be admissible as noncharacter motive evidence.
*894 See Turnidge , 359 Or. at 452, 374 P.3d 853 (whether other-acts evidence is relevant and admissible turns on whether "a connection between the disputed evidence" and "the state's theory about defendant's motive can be logically inferred"). For example, in State v. Hayward , 327 Or. 397, 407, 963 P.2d 667 (1998), the Supreme Court concluded that there was a sufficient connection between the defendants' interests in satanism and death-metal music and the charged offense. In so holding, the court pointed to evidence that, when the defendants committed the charged offenses, they had planned to carve satanic symbols in the victims and committed the crimes in order to pay homage to death-metal band members. Id. at 408, 963 P.2d 667. In addition, there was evidence that, while committing the crime, one of the defendants emitted a "deep growl" similar to one that a witness heard when listening to death-metal music. Id. at 400, 963 P.2d 667. Thus, in Hayward , the relevance of the uncharged misconduct did not depend on an inference that a person who is interested in satanism and death-metal music is the kind of person who would brutally murder a stranger. Instead, there were other facts logically connecting the identified motive to the manner in which the defendants committed the charged crimes. Thus, "something in the circumstances of the charged crime * * * suggest[ed] that the identified motive [was] at work." See Wright , 283 Or.App. at 174, 387 P.3d 405.
According to the state, it is reasonable to infer from the notes that defendant "was generally interested in having rough, nonconsensual sex with women he did not know," and *255 that interest logically makes it more likely that defendant intended to have sexual contact with M, a female stranger, when he attacked her. Yet, the chain of inferences relied upon by the state necessarily requires character-based reasoning. Unless one infers from the notes that defendant is "more inclined to act or think in a [sexually violent] way than is typical," see 1 McCormick on Evidence § 186, the notes do not have any tendency to establish defendant's specific intent when he attacked M because nothing about the attack actually confirms that it is connected to the notes or their content. The circumstances of the attack, viewed on their own, do not indicate that there is any clear relationship between the attack and defendant's communications directed at other female strangers. See Wright , 283 Or.App. at 174, 387 P.3d 405 ("[T]he mere possibility that the same motive that caused an earlier crime or act also caused the charged crime is not enough to make evidence of the prior act relevant."). In other words, to conclude that the same motive that drove defendant to leave sexual notes for two female strangers also induced him to sexually assault a third person on a different occasion, one must draw the intermediate inference that the desire expressed in the notes was not personal to the recipients but, rather, was reflective of a general desire for violent sexual gratification. That inference depends upon the existence of a persistent trait intrinsic to defendant: that defendant has an interest in sexually assaulting any female stranger and that that interest persists in "varying situations [throughout] life," see Marshall , 312 Or. at 372, 823 P.2d 961 (internal quotation marks omitted). Thus, the state's theory of relevancy depended upon character-based reasoning, and the trial court therefore erred by admitting the evidence for a "non-character" purpose.[3] *895 *256 At oral argument, the state more or less acknowledged that possessing a peculiar sexual interest is a "character trait" to the extent that it involves a "propensity" to have a particular mental state (as opposed to a propensity to commit the actus reus ). The state then argued that uncharged misconduct that evinces a tendency to possess a specific mental state is not "character" evidence because it does not depend on an inference that the person acted in conformity with his character, but rather on an inference that, when he acted, his thoughts were consistent with his established tendencies.
We need not address whether the state's argument might be viable under other circumstances. The problem with the state's argument on the facts of this case is that the state offered the notes to prove that defendant was guilty of attempted sexual abuse. To prove that a defendant is guilty of an attempt crime, the state must prove that the person "intentionally engage[d] in conduct which constitutes a substantial step toward commission of the crime." ORS 161.405(1). In this case, the state was required to prove that defendant specifically intended to subject M to sexual contact by means of forcible compulsion and that he had taken a substantial step toward doing so. Thus, the state sought to admit the notes to prove not only that defendant thought in a particular way during the charged offense, but that he was going to act in a particular way. In other words, proof of the requisite mental state for attempted sexual abuse was inextricably bound up with proof of the acts that defendant intended to and was willing to commit. Thus, regardless of whether the state's argument would have some persuasive force under other circumstances, it does not undermine our conclusion that the notes were not relevant as noncharacter evidence of defendant's motive for the attack.
As noted above, the state seems to acknowledge that its theory of relevance for the notes depends on a character-based inference-i.e. , that we can infer from the notes that defendant is a person with a peculiar sexual interest (a *257 "general interest" in nonconsensual sex with female strangers), and that "general interest" tends to prove that he was acting in conformity with that interest when he attacked M. To that end, the state relies primarily on OEC 404(4) and Williams , which held that "propensity evidence can be admitted in a child sexual abuse case under OEC 404(4) if due process permits," while reserving the question of "the extent to which prior bad acts evidence can be admitted solely for propensity purposes in criminal cases other than ones involving child sexual abuse."See Turnidge , 359 Or. at 432, 374 P.3d 853 (so describing Williams ).[4]
The state's reliance on Williams is unavailing, however, because the state did not advance a character theory of relevance before the trial court, nor did the trial court admit the notes on that basis. Instead, the trial court made clear that it was admitting the notes for a "non-character" purpose. On appeal, the state does not appear to argue that its character-based theory of relevance meets the requirements for application of the " 'right for the wrong reason' " principle. See Outdoor Media Dimensions Inc. v. State of Oregon , 331 Or. 634, 659-60, 20 P.3d 180 (2001) (stating the requirements for affirmance on an alternative basis). Accordingly, we decline to consider the validity of a character-based theory of relevance for the first time on appeal. Cf. Jones , 285 Or.App. at 690, 398 P.3d 376 (declining to consider a character-based theory of relevance when the state did not advance the theory below, and the state did not make a developed argument that such a theory meets the requirements *896 for consideration of an alternative basis for affirmance).
Finally, the state does not argue that any error by the trial court in admitting the evidence of the notes was *258 harmless, and we cannot conclude that it was. The notes were qualitatively different from the rest of the state's evidence, as they were the only evidence of an unquestionably sexual nature relied upon by the state to prove that defendant intended to subject M to sexual contact. See State v. Henderson-Laird , 280 Or.App. 107, 119-20, 380 P.3d 1066, rev. den. , 360 Or. 465, 384 P.3d 154 (2016) (evidentiary error was not harmless in a theft prosecution because the erroneously admitted evidence provided the only direct evidence demonstrating that defendant knew the property at issue was stolen and was, therefore, "qualitatively different from the other evidence"). Therefore, we cannot conclude that there was little likelihood that the error affected the verdict with respect to defendant's conviction for attempted sexual abuse. See State v. Davis , 336 Or. 19, 32, 77 P.3d 1111 (2003). Moreover, we cannot conclude that there was little likelihood of the error affecting the verdict as to defendant's convictions for assault and kidnapping. Although it is true that the state presented DNA evidence connecting defendant to the scene, the state also relied on the notes as demonstrating defendant's motive for committing those crimes, a central issue in the case. In addition, the content of the notes is extremely graphic and inflammatory. Cf. State v. Goff , 258 Or.App. 757, 765, 311 P.3d 916 (2013) (erroneous admission of prior-misconduct evidence was not harmless when it was highly inflammatory and related to "the central issue in th[e] case").
Although we conclude that the trial court committed reversible error by admitting the notes as noncharacter evidence of defendant's motive, we must next address defendant's second assignment of error, which challenges the trial court's denial of his MJOA. We must do so because, if defendant were to prevail on that assignment, he would be entitled to outright reversal of the judgment as to the attempted sexual abuse count. See State v. Schodrow , 187 Or.App. 224, 231, 66 P.3d 547 (2003) ("Generally, when there is a failure of proof as to a material element of a crime, this court will conclude that the trial court should have granted a motion for judgment of acquittal and will reverse a conviction outright."). In general, when considering whether the trial court erred in denying a judgment of acquittal, we consider all evidence admitted at trial, not just the evidence *259 that was properly admitted. State v. Bautista , 271 Or.App. 247, 259, 351 P.3d 79 (2015).
In order to sustain a conviction for attempted first-degree sexual abuse as charged in the indictment, the state was required to prove beyond a reasonable doubt that defendant "intentionally engage[d] in conduct which constitutes a substantial step toward" subjecting M to "sexual contact" by means of forcible compulsion. ORS 161.405 (attempt); ORS 163.427(1)(a)(B) (first-degree sexual abuse); see also ORS 163.305(6) (defining the phrase "sexual contact" is defined to mean "any touching of the sexual or other intimate parts of a person or causing such person to touch the sexual or other intimate parts of the actor for the purpose of arousing or gratifying the sexual desire of either party"). With regard to defendant's mental state, the state was required to prove that defendant "act[ed] with [the] conscious objective" to forcibly touch M's sexual or intimate parts (or force M to touch his sexual or intimate parts) for the purpose of sexual gratification. See ORS 161.085(7) ( " 'Intentionally' or 'with intent,' when used with respect to a result or to conduct described by a statute defining an offense, means that a person acts with a conscious objective to cause the result or to engage in the conduct so described."). Thus, we must decide, from the evidence and logical inferences drawn therefrom, whether any rational juror could conclude beyond a reasonable doubt that defendant possessed the requisite mental state.
In reviewing a trial court's denial of a defendant's motion for a judgment of acquittal, we consider both "the disputed and undisputed facts in the light most favorable to the state, as well as inferences of innocence that flow from the undisputed evidence."
*897 State v. Simmons , 279 Or.App. 756, 764, 379 P.3d 580, rev. den. , 360 Or. 697, 388 P.3d 710 (2016) ; see also State v. Krummacher , 269 Or. 125, 134, 523 P.2d 1009 (1974) ("[I]nferences of innocence [are to] be considered that may be drawn from the facts in evidence (as found in the State's favor) or from the paucity of such facts, and if they are sufficient to create a reasonable doubt, the case may not be submitted to the jury."). We then must determine "whether any rational trier of fact, accepting reasonable inferences and *260 making reasonable credibility choices, could have found the essential elements of the crime beyond a reasonable doubt." State v. Lupoli , 348 Or. 346, 366, 234 P.3d 117 (2010). In resolving that inquiry, "the state is entitled to the benefit of the combined effect of reasonable inferences that can be drawn from the evidence, as distinguished from inferences based on speculation, including the stacking of speculative inferences." Simmons , 279 Or.App. at 764, 379 P.3d 580 ; see also State v. Hennagir , 246 Or.App. 456, 266 P.3d 128 (2011), rev. den. , 352 Or. 33, 281 P.3d 611 (2012) ("Reasonable inferences from circumstantial evidence are permissible; speculation and guesswork are not." (Internal quotation marks omitted.) ). A defendant's subjective intent "may be inferred from the evidence and circumstances surrounding the defendant's actions," and such an inference is reasonable "if there is a logical connection between the surrounding activity and the defendant's [purported] state of mind." State v. Branch , 208 Or.App. 286, 289, 144 P.3d 1010 (2006) ; see also State v. Rose , 311 Or. 274, 282, 810 P.2d 839 (1991) ("Evidence of a defendant's intent is rarely, if ever, proven by direct evidence. Intent is an operation of the mind, and it is seldom susceptible of direct proof.").
In determining whether a rational factfinder could find beyond a reasonable doubt that defendant intended to inflict a sexual assault on M, our decision in State v. O'Hara , 136 Or.App. 15, 900 P.2d 536, rev. den. , 322 Or. 362, 907 P.2d 249 (1995), is instructive. In that case, the defendant entered a women's restroom in a campground and stayed in one of the stalls for more than two hours. Id. at 17, 900 P.2d 536. The victim entered the restroom, and as she was leaving, the defendant punched her and knocked her against a wall; after she started screaming for help, the defendant covered her mouth and pushed her down toward the floor. Id. He then hit her repeatedly, pounded her head against the wall multiple times, grabbed her by the throat, and continued to try to push her to the floor of one of the stalls. Id. During the struggle, the victim heard the defendant say to her, "You'd better." Id. Eventually the victim was able to fight the defendant off. Id. at 18, 900 P.2d 536. The defendant was convicted of attempted first-degree rape. Id.
On appeal, the defendant argued that the evidence was not sufficient to prove that he intended to forcibly subject *261 the victim to sexual intercourse. Id. We rejected that argument, reasoning at follows:
"The facts in this case would support jury findings that defendant had been lying in wait, in a location where only women would be, had tried to knock out or otherwise disable the victim, had tried to trap her in a bathroom stall and had threatened her to submit to him or face negative consequences ('you'd better'). Also, defendant had not waited for a victim who was carrying a purse and had not fled when this victim fought back. The jury could infer from those facts that defendant intended to commit a crime against the victim's person, as opposed to her property. The jury also could have inferred from defendant's verbalizations and actions-especially his attempts to force the victim to the floor-that defendant's goal was not simply to assault the victim, i.e. , the jury could infer that he intended to commit a [sexual assault]."
Id. at 18-19, 900 P.2d 536. We so concluded despite the fact that the defendant neither said nor did anything that unquestionably evinced a sexual purpose for the attack.
In this case, the most pertinent evidence bearing on defendant's mental state includes the following: (1) M was wearing running clothing, and she was not wearing a watch or jewelry or other visible items of obvious value; (2) defendant tackled M with enough force to cause her to lose consciousness; (3) defendant dragged M from the sidewalk into a shallow ditch toward a brushy *898 area; (4) when M fought back, defendant continued to try to hold her down on the ground; and (5) defendant did not attempt to take any of M's property during the attack.
From that evidence, a rational juror could find beyond a reasonable doubt that defendant intended to subject M to sexual contact when he attacked her. From the fact that defendant tackled M with such a degree of force that she blacked out, a jury could infer that defendant intended to incapacitate her. From the fact that he dragged her from the sidewalk into a shallow ditch and toward a brushy area, a jury could logically infer that defendant intended to move M, who was incapacitated, to a location where he was less likely to be viewed by passersby. From that inference, a jury could further infer that defendant did so because he wanted more *262 time to commit a crime against her without being caught. A jury could also infer from the fact that defendant persisted in trying to subdue M after she fought back that his intent was not simply to physically assault or rob her. In addition, a jury could logically infer that defendant did not intend to rob M because he could have robbed M of the only item that may have been of value on her person (whatever device she was using to listen to music) while she was initially blacked out and without moving her to a more secluded location.[5] Therefore, the trial court did not err by denying defendant's motion for a judgment of acquittal, and defendant is not entitled to outright reversal as to that count.[6]
Reversed and remanded.

Defendant argued that, in order to determine whether the notes were relevant, the trial court must apply the six-step analysis set forth in State v. Johns , 301 Or. 535, 555-56, 725 P.2d 312 (1986). However, as we recently explained, "[e]vidence offered to prove intent by showing the defendant's motive is not subject to the Johns analysis." State v. Tena , 281 Or.App. 57, 59, 384 P.3d 521, 523 (2016), rev. allowed , 360 Or. 752, 388 P.3d 721 (2017).

From the evidence that M was listening to music while she ran, we infer that she was carrying some device for that purpose, although the record otherwise permits no inference about whether that device was visible to others.

The cases cited by the state are meaningfully distinguishable. In State v. Wilhelm , 168 Or.App. 489, 493, 493 n.3, 3 P.3d 715 (2000), we assessed whether letters written by the defendant to the victim indicating a sexual interest in the victim were relevant in a prosecution for sexual abuse. Because the uncharged misconduct involved the victim in the case, Wilhelm is inapposite. See generally Leonard, The New Wigmore , § 8.3 at 496 (describing the admission of sexual-misconduct evidence involving a person other than the victim as noncharacter evidence of "motive" in a sexual assault prosecution as "fatally flawed"). In addition, in State v. Millar , 127 Or.App. 76, 81, 871 P.2d 482 (1994), we concluded that evidence of the defendant's possession of a pornographic magazine that "focus[ed]" on "the exhibition of the genitalia of girls in their early teens" was relevant for the nonpropensity purpose of proving that the defendant intended sexual contact when he touched the victim's genital area. In that case, there was evidence in the circumstances of the crime that were plainly connected to the motive evinced by the uncharged misconduct, and, therefore, Millar does not control the outcome here.

In a memorandum of additional authorities, the state also asserts that our decision in Clarke "held that other-act evidence was properly admitted under OEC 404(4) to prove the defendant's mental state." In that case, we held that the trial court did not err in admitting other-acts evidence to prove defendant's motive-a traditional, noncharacter purpose for admitting other-acts evidence. See 279 Or.App. at 385, 389, 379 P.3d 674. We expressly stated that "Williams does not radically alter our evaluation of the relevance of the challenged evidence," and, because such evidence was offered for a noncharacter purpose, we found it appropriate to "draw on the settled principles of relevance embodied in OEC 404(3) and case law construing that provision." Id. at 382, 379 P.3d 674 (internal quotation marks omitted). The analysis in Clarke does not support the state's theory of relevance under OEC 404(4).

As noted above, when considering the denial of a defendant's motion for a judgment of acquittal, we generally consider the rational inferences that flow from all of the evidence admitted, including evidence that was improperly admitted. See State v. Verdine , 290 Or. 553, 558, 624 P.2d 580 (1981) (explaining that we consider all of the evidence "because if all the evidence, including that erroneously admitted, is insufficient[,] the law is clear that the cause cannot be remanded for a new trial"). As explained earlier in this opinion, we conclude that the notes were not relevant for the purpose for which they were admitted. It is unnecessary for us to consider the implications of that conclusion for the MJOA, because even if one excludes them from the analysis, the record was sufficient to support the denial of defendant's MJOA.

Our disposition as to defendant's first assignment of error obviates the need for us to address defendant's third assignment of error, which is a challenge to the lawfulness of his sentence.